# CHARLESTON.

Moss IRON WORKS v. COUNTY COURT.

Submitted October 25, 1921.    Decided November 1, 1921.

1.    MECHANICS' LIENS—*Public Property is Not Generally Subject to Mechanics' Liens.*

As a general rule, public property is not subject to liens created by chapter 75, Code, 1918, such encumbrances being contrary to public policy.    (p. 373).

2.  SAME—*If Allowed Upon County Property, May Injure Public.*
    Such liens may, if permitted, effectually obstruct the trans-
    action of the affairs of the county, to the injury of the public.
    (p. 373).

3.  COUNTIES—*Mechanics' Liens Not Allowed Against County
    Courthouse and Jail for Labor and Materials Furnished by
    Sub-Contractor.*

    The broad provisions of a mechanic's lien law are not suffi-
    cient to authorize liens against a county court house and jail
    for labor employed, materials and equipment furnished by a
    sub-contractor, for which the contractor fails to pay him, ac-
    cording to the terms of the contract between them.    (p. 373).

4.  MECHANICS' LIENS—*Legislative Intention to Allow Liens on
    Public Buildings Must be Expressed in Unmistakable Terms.*

    Although the legislature in the exercise of its legitimate
    powers may, in a mechanic's lien law, authorize the creation of
    and mode of perfecting liens on public buildings, it must
    clearly express its purpose to do so in unmistakable and
    specific terms.    (p. 373).

5.  SAME—*Statute Construed as Not Authorizing Liens on Public
    Property.*

    Chapter 6, Acts 1917; Chapter 75 Code 1918, does not, when
    properly construed as a whole, authorize, and apparently was
    not intended to authorize the creation of such liens on public
    property.    (p. 377).

6.  STATUTES—*Are to be Construed as a Whole, So That Arrange-
    ment Into Parts or Sections is of No Moment.*

    As a statute is to be construed in its entirety in order to
    determine its effect and meaning, its arrangement into parts
    or sections is of no moment, whether the parts or sections are
    in logical sequence or otherwise.    (p. 377).

7.  MECHANICS' LIENS—*Different Section of Lien Statute Con-
    strued Not to Authorize Incumbrance of Public Buildings.*

    The different sections of chapter 75, Code, properly consid-
    ered and construed, do not authorize the encumbrance    of
    buildings devoted to public use by mechanic's or other like
    liens.    (p. 377).

8.  SAME—*Affected by Sale of Building So That Lien is    Only
    Permissible When Clearly Authorized.*

    Such liens are ineffectual except by a sale of the building
    encumbered by them, and as such a sale contravenes public
    policy, it is permissible only as and when clearly authorized
    by law.    (p. 377).

9.  COUNTIES—*County Court Held Not Liable for Neglect in Ac-
    cepting Contract Without a Bond.*

    A county court is not liable at the suit of an assignee of a
    mechanic's lien creditor for its own neglect, or the neglect
    of its officers or agents, to perform a duty, such as the ac-
    ceptance of a contract without a bond, when a bond is re-
    quired, in the absence of a provision therein declarative of such
    liability.    (p. 378).

Case certified from Circuit Court, Jackson County.

Action by the J. E. Moss Iron Works and others against
the County Court of Jackson County and others to enforce
a mechanic's lien for materials, equipment, and labor fur-
nished to the courthouse and jail.  Demurrer to complaint
sustained, and case certified by the circuit court.

*Affirmed.*

*Smith D. Turner* and *W. W. Smith,* for plaintiffs.
*W. F. Boggess* and *Lewis H. Miller,* for defendants.

LYNCH, JUDGE:

Stated in somewhat different language, but in effect the
same as that contained in the order certifying them, the ques-
tions to be discussed are these:  Is the property of a county,
the court house and jail and the lot on which they stand,
within the meaning of the mechanic's lien law, as amended
and reenacted by ch. 6, Acts, 1917, ch. 75, Code 1918?  If
not, is the county court liable for the unpaid debts due a sub-
contractor for materials, equipment and labor furnished by
him and installed in a court house and jail?  The questions
the demurrer of the county court of Jackson county raised,
and the answer of the circuit court of that county was in the
negative.

The Jackson county court contracted with Prescott Con-
struction Company May 24, 1917, seven days after the re-
vised statute became effective, to construct and repair the
county court house and jail, furnish all the labor and material
and perform all the work necessary for that purpose, accord-
ing to the plans and specifications incorporated in the con-
tract, and made part of it, for a consideration payable as the
work progressed.  The original amount was $67,133.00, later

increased to $100,000.00 by extras authorized by the county court.

Subsequently, Prescott Construction Company contracted with Huntington Iron Works to furnish some of the materials and perform certain parts of the work provided for in the original and amended contract and specifications, payments therefor to be made upon the same terms and conditions, those to be made to Prescott Construction Company. These contracts the architect, L. J. Dean, approved when submitted for his approval, as required by the agreement with the county court.

Huntington Iron Works began to furnish the materials and perform the work, it undertook to furnish and do, soon after the date of its contract with Prescott Construction Company, complied with the terms and conditions so prescribed, and completed it November 15, 1919, and Dean accepted it December 31, 1919, as completed; and although the county court paid Prescott Construction Company for the work it was to perform and did perform, the latter company did not pay Huntington Iron Works the amount due it, but left unpaid a balance of $6,380.39. For this balance Huntington Iron Works in due form prepared and caused to be recorded in the office of the county clerk of Jackson county a notice of mechanic's lien, and perfected such lien in all respects in compliance with the mechanic's lien statute. At least there seems to be no objection as to any lack of formality in the effort to procure a formally perfect lien.

Having become indebted to the plaintiff, The Moss Iron Works, in the sum of $4,242.15, and to the plaintiff, Wheeling Metal & Manufacturing Company in the sum of $1,833.01, in some manner not disclosed in the bill, Huntington Iron Works assigned and transferred to each of them, out of the $6,640.39, the amounts due them respectively, and to enforce payment of the lien is the object of this suit.

Plaintiffs invoke the provisions of sections 12 and 14 of chapter 6, Acts 1917, chapter 75, Code 1918, as authority for the liens and the right to enforce them by a sale of the court house and jail, and the ground on which they stand. By section 12, the state board of control, county courts, boards

of education, boards of trustees and all other legal bodies
having authority to contract for the erection, construction,
improvement, alteration or repair of any public building or
structure, used or to be used for public purpose, are di-
rected in so contracting to require the person or persons to
whom it shall award any such contract to execute a good,
valid, solvent and sufficient bond, in an amount at least equal
to the reasonable cost of the materials, machinery, equipment
and labor required in the completion of the contract, upon
the condition that in the event such contractor shall fail to
pay in full for such materials, machinery, equipment and la-
bor used by him in the erection, construction, improvement,
alteration or repair of such public building, or other struct-
ures used or to be used for public purposes, the bond and the
sureties thereon shall be liable to the person who has fur-
nished such material, machinery, equipment or labor for the
full payment of the expenses incurred by him in that behalf.
This bond the section requires to be filed with the secretary of
such board or other legal body, or other custodian of its pa-
pers and records.

According to section 14, the contractor is to be deemed
and treated as the agent of the owner of the building, or
other structure, and the improvements appurtenant thereto,
and his interest in the lot on which the building is erected,
improved or repaired, or onto which it is removed, and the
owner and his property is liable for the full and true value
of all work and labor done, and materials, machinery and
equipment furnished by a sub-contractor, if the owner fails
to require the contractor to execute a bond in the amount at
least equal to the reasonable costs of such material, machin-
ery and equipment, and labor performed, or to be performed
pursuant to the terms of the contract, or fail to record the
contract and bond, when so given, or accepts a bond for a
less amount.

As the statute before the amendment contained the same
general mechanic's and labor liens provisions, without spe-
cific reference to property, real or personal, belonging to the
public, or purchased and held for public use, as interpreted
in *Hall's Safe & Lock Co.* v. *Scites*, 38 W. Va. 691, it did not

apply to such buildings. That was a suit to enforce a mechanic's lien against the court house and grounds of Wayne county. The first point of the syllabus reads: ''The public buildings of a county are wholly exempt from the operation of the mechanic's lien law, and can not be sold under execution or other process.'' · The statute then in force had the same general provisions as the amended statute, except insofar as section 12 enlarges earlier statutes in the particular noted. The mechanic's lien law, as it appears in the 1894 code, that being the law construed in *Hall's Safe & Lock Co.* v. *Scites,* cited, says: ''Every material man, workman, laborer, mechanic or other person performing labor or furnishing any material or machinery under a contract with a principal contractor, or his subcontractor for the construction, alteration, repair, or removal of any houses or other structures provided for in a contract between the owners thereof, or his authorized agent, and such principal contractor shall have a lien to secure the value of the labor performed, and the material or machinery furnished—upon such house or other structure'' etc.

Notwithstanding this broad and comprehensive language, language sufficiently broad and comprehensive to include a county court house and jail, and it was so considered by plaintiff in that case, the circuit court and this court held otherwise, and refused to approve and enforce the pretended lien. This holding is justified by an abundance of authority. Does either section of the revised mechanic's lien statute warrant the application of any other rule or principle? Section 12 contains no terms and no language significant of an intention or purpose to permit a contractor or his subcontractor to acquire a lien upon public property, as a court house and jail, for the default either of the original contractor or another person, firm or corporation, that agrees to furnish and does furnish the material, equipment or labor required in the erection, construction or repair of such a building. It says not a word concerning a lien of any kind or character. Its intended and clearly disclosed purpose is to make it the duty of the corporations and boards therein specified to demand and exact a bond in a definite amount,

the contract price of the work to be done, the labor to be performed and the equipment to be furnished to complete the building. Its purpose was not to protect those bodies against the default of the contractor, except as to materials, machinery, equipment and labor.

And although the language of section 14 may be broad enough to include county courts and other state agencies enumerated in section 12, it does not specifically name them, nor does any other section of the chapter. Section 12 alone does that. Nowhere else is there the slightest reference to the board of control, county courts, boards of education, boards of trustees and other legal bodies, having authority to contract for the erection, construction, alteration or repair of public buildings or other like structures, used or to be used for public purposes. Inclusion by reference or interpretation is not sufficient, when the right to perfect a mechanic's lien or materialman's lien upon public buildings is involved. To warrant the creation and enforcement of such a lien against public buildings, the authority must be specific, positive and unmistakable in its meaning and terms. They must leave open no room for construction or interpretation. If the legislature intended to authorize or permit the subjection of public buildings to liens as public property may be subjected, as by pursuing the method prescribed, it could and doubtless would have made its intention clear and explicit. To subject property owned and used by the public for the transaction of public business to mechanic's liens, the authorization must, according to the general, indeed the almost invariable rule, be unequivocal not inferential. "There can be no mechanic's lien on public property," says Boisot, sec. 208, Mechanic's Liens, "unless the statute creating such lien expressly so provides, since such a lien would be contrary to public policy, and would also be incapable of enforcement, not being subject to forced sale." To support this statement he cites many decisions. See also, *Hutchinson* v. *Krueger*, 34 Okla. 23, 124 Pac. 591, Ann. Cas. 1914 C. 98, note. The statutes construed in these decisions, so far as we have examined them, authorize mechanic's, artisan's and laborer's liens on all buildings and structures. Of course,

court houses and jails are structures ,under the meaning of such legislation, and yet, with but few exceptions, courts have not construed them so as to include buildings devoted to public uses. There being such harmony among the authorities to this effect, further citation seems needless.

Plaintiffs, however, would have us accept their theory, which if tenable, would require such a construction of sections 12 and 14 as would warrant the liens claimed by them. According to plaintiffs, no other construction is permissible or possible in view of the context. That challenge goes direct to the heart of the subject dealt with by the authorities cited and by numerous others that could be cited. As before stated, a statute which has for its purpose the authorization of encumbrances in the form of mechanic's and other like and similar liens against public property devoted to governmental uses must be explicit and positive. With this condition sections 12 and 14 fully complied, if plaintiff's argument is meritorious; but do they? Section 12 does, it is true, require a bond where the contract is for. the construction or improvement of property owned, usable and used, or to be used for the transaction of public affairs, but, as we have seen, it need not be recorded as part of the public record. The purpose of such a bond the section ·fully discloses; it is for the protection, not of the contractor himself, but of those who contract with him for material, equipment and labor necessary for the completion of his contract. That being its paramount, if not its exclusive, purpose, the· contractor has a material interest in its execution and in insisting upon its execution, as the county court has, notwithstanding the provision exacting it. But such interest does not begin and end in the contractor, it extends to every one with whom he contracts, where a public building is to be. improved. If a subcontractor undertakes to equip such a building it only devolves upon him to refuse to furnish the equipment, unless the bond required is given, as it is mainly to protect him. While it is true, if plaintiff's theory is sound, that without such bond the contractor becomes the agent of the county court, and the county court liable to the sub-contractor for the equipment or labor so furnished, yet in that section, and

in the other sections of the statute, there is no word or language sufficient to justify the inference of an intention on the part of the legislature to fix liability either upon the county court or the property of the county, for the payment of an indebtedness of the contractor who engages to erect, improve or repair a public building for county purposes, except such general terms as relate exclusively to privately owned property.

Nor is there to be found a sufficient basis for such inference in the language of section 9, although its provisions and the provisions of section 12 are similar. The general provisions of the act, considered as a whole, although apparently inclusive, are not broad enough to indicate publicly owned buildings, when construed in accordance with the prevailing weight of judicial authority.

Some significance certainly is to be attributed to the omission in section 12 of the requirement to record in the county court clerk's office the bond called for in that section. It is to be filed, not with the clerk of the county court for record, but with the secretary, or other custodian of the records and other papers of the governmental agencies therein specified. Whatever influenced the legislature to substitute delivery to the clerk or custodian of the records and papers of such bodies for recordation in the county record office need not be surmised, in the face of the provision to the contrary. The fact remains outstanding that by no provision of the statute considered, is it necessary to record the contract in the county court clerk's office, when public buildings are the subject of the improvement. When so filed it is available to anyone who may come to inspect it. While in the custody of the clerk, or other like official representative of such bodies, it is accessible to anyone lawfully entitled to know of its contents. Not so, when it is the bond given for the protection of a private owner of property, improved under the terms of a contract.

A second reason will appear upon a reasonable construction of the sections preceding number 12. It is not necessary to enter into detail as to the provisions contained in most of them. Their provisions are general, and have for their pur-

pose, designation of the persons entitled to their protection, and the method of acquiring liens on private property, and prescription of the method for perfecting such liens. In this respect, they are not materially unlike the usual mechanic's lien statutes. By section 8, an owner may limit his liability under the terms of a contract for the construction and repairs of his real property to the price agreed upon by him and the contractor, by recording the contract in the proper office of the county wherein such property is located, prior to the beginning of the building, erection and construction of improvements thereon, and by recording with the contract a valid and solvent bond in a penalty equal to the contract price with solvent surety, conditioned that in the event any such laborer, materialman, or other person, having perfected his lien allowed by the act, be deprived by the recordation of his contract from receiving from said owner the amount of his said lien, then the said bond and the sureties thereon shall be responsible to said lienor for the amount of said lien account, or for any balance thereof not collected by said lienor from said owner and from said property. The provisions of this section somewhat resemble those contained in section 12. In other particulars they are different. They differ in this: the bond required in section 8, when recorded with the contract, limits the liability of the owner to the amount agreed upon by the parties, and if the indebtedness of the contractor exceeds such amount, the sureties must pay the excess to the materialmen and laborers whom the contractor has not paid. The converse of these provisions appears in section 12, in that its purpose was to create a liability upon the owner who fails to require a bond, such as the section calls for, and does not record it and the contract as therein required, even though the amount so due and unpaid exceeds the contract price. So that these two sections, when read together seem to be counterparts in a general system of liability. In other words, private property improved by the erection or repair of buildings thereon is exempt from liability if the contractor executes the bond specified, and the owner records it together with the contract. The lack of sequence of the sectional provisions does not affect the right

to construe them together, when the provisions intimately relate to the same subject matter. They are, in a sense, pari materia, whatever may be their position in the act, in that they provide for the execution and recordation of bonds, and for the consequences that ensue for the failure to execute them. Their arrangement in the act, though not orderly, does not affect the question at issue. Section 14 being the counterpart of section 9, they are to be construed together, notwithstanding the interposition of other sections. "A statute is passed as a whole, and not in parts or sections and is animated by one general purpose and intent. Consequently each part or section should be considered in connection with every other part or section, and so as to produce a harmonious whole." Sutherland, Statutory Construction (2nd Ed.) sec. 368. "Words and clauses must be read in a sense which harmonizes with the subject matter and general purpose of a statute." Idem, sec. 370.

But to what extent, if at all, may a contractor or sub-contractor avail himself of the benefit of such a lien on public property of any character, real or personal, usable and used for the transaction of the public affairs of the county, if he can not sell it to raise a fund sufficient to satisfy the lien? The only mode prescribed by law for the satisfaction of mechanic's liens of any kind is by a sale of the property so encumbered. But section 43, ch. 39 expressly forbids the sale of "lands, buildings and books belonging to a county and used for county purposes, by execution or other process." A proceeding for the purpose of enforcement of a lien, created according to chapter 75, is in effect a process, within the meaning of the section cited. This prohibition alone furnishes ample justification of the ruling upon the demurrer.

The discussion by plaintiff's counsel of the second question certified proceeds upon the theory that even if a mechanic's lien is not enforceable by a sale of county property, yet, because the county court neglected to exact the bond required by section 12, its neglect imposes liability upon that court, and that to make the liability effective, the decree to be entered in the cause should include the county court. The right of plaintiffs to this relief, they base upon the agency brought

into being by the failure to require the bond prescribed in section 12. In other words, according to this argument, the legislature intended to substitute Prescott Construction Company, probably an insolvent corporation, in lieu of the Jackson county court as to any indebtedness due to the creditors of the substituted agent, and thereby create or sanction a liability where otherwise none would have existed. There is no statute that goes to that extent, so far as we are advised, at least none is cited by counsel. Such a provision is in section 14, but, according to our construction of the act as a whole, it does not embrace, and we believe, was not intended to embrace, county courts. If the legislature had deemed advisable a law inconsistent with the general policy recognized by most courts as to the non-liability of governmental agencies for mechanic's liens, it should have made its purpose clear. In the absence of such clearly expressed intent "a county court is not responsible in damages at the suit of an individual—in consequence of its neglect or the neglect of its officers and agents to perform any duty enjoined by law," *Watkins* v. *County Court*, 30 W. Va. 657. Plaintiffs and defendant, county court, had the same opportunity to know the legislative requirement for a bond, and to neglect to demand it is as much the fault of one as the other. Plaintiffs could have refused to furnish what they furnished for the completion of the construction company's contract, until such bond as the statute requires was executed for their protection. Neither they nor the county court perhaps recalled that provision, as it became operative only a few days before the date of the contract.

As what has been said responds to the question certified, the order of this court will approve the ruling upon the demurrer.

*Affirmed.*