# CHARLESTON.

STATE *ex rel* WEST VIRGINIA SAND & GRAVEL COMPANY
*v.* ROYAL INDEMNITY COMPANY

(C. C. No. 327)

Submitted January 28, 1925.  Decided June 2, 1925.

1.  HIGHWAYS—*County Court May Require Bond Containing Condition That Contractor to Improve County District Road Will Pay Persons Performing Labor or Furnishing Materials.*

    A county court authorized to contract to permanently improve a county-district road by use of asphaltum, concrete, brick, stone, block, or other macadamizing process of equal merit, and to exact of a contractor his bond for the faithful performance of his contract, has power to require such bond to contain a condition that the contractor will pay all persons performing labor or furnishing materials at his request and for the purpose of assisting him in the completion of his contract.  (p. 281.)

    (Highways, 29 C. J. § 353).

2.  SAME—*County District Highway Improved by Use of Cement and Stone Held "Structure" Within Statute Authorizing County Court to Require Bond that Contractor Shall Pay for Materials, etc., Used by Him in Construction Thereof.*

    A certain county-district highway, "Section No. 6, East Bank—West 2.63 miles," permanently constructed and improved by use of cement and stone, by the county court, under authority of section 104, chapter 43, Code, is a "structure," within the meaning of section 12, chapter 75, Code, providing that said county court shall require a good, valid, and sufficient bond, in the penal sum equal at least to the reasonable cost of materials, machinery, equipment, and labor required for the completion of the contract, and conditioned that in the event such contractor shall fail to pay in full for all such materials, machinery, equipment, and labor used by him in the construction, improvement, alteration, or repair of any "public building or other structure, or building or other structure used or to be used for public purposes." (p. 285.)

    (Highways, 29 C. J. § 353; Structure, 37 Cyc. p. 337).

3.  SAME—*One Not Party to Contractor's Bond Made For His Benefit May Not Sue Thereon in Court of Law, Unless Contract Was Made for His Sole Benefit.*

    Section 2 of chapter 71, Code, does not authorize one not

a party to a bond made for his benefit to sue thereon in a court of law, unless such contract was made for his sole benefit.    (p. 288.)

(Bonds, 9 C. J. § 152).

(Note: Parenthetical references by Editors, C. J.—Cyc.    Not part of syllabi).

Case Certified from Circuit Court of Kanawha County.

Proceeding by the State, on the relation of the West Virginia Sand & Gravel Company, against the Royal Indemnity Company, by way of notice of motion for judgment on contractor's bond.    After sustaining a demurrer to the notice, the court certified questions.

*Ruling affirmed.*

*Koontz, Hurlbutt & Revercomb,* for plaintiff.
*Harold A. Ritz,* for defendant.

WOODS, JUDGE:

This is an action at law certified from the Circuit Court of Kanawha County wherein several questions are raised for decision by this court.  The proceeding is by way of notice of motion for judgment on a contractor's bond.

The facts out of which this action arose are as follows: The County Court of Kanawha County entered into a written contract with G. T. Fogle & Company for the repair and construction of a public highway lying between East Bank and Cabin Creek in Kanawha County and described as "Section 6 East Bank—West, paving 2.63 miles."  Said written contract provided further as follows:  "A copy of the bond given by the contractor to secure a proper compliance with the terms and provisions of this contract is hereto attached and made part hereof."  In compliance with the terms of said contract, and in compliance with the statutory requirement, Code, chapter 43, section 104, G. T. Fogle & Company, principal, and the Royal Indemnity Company, surety, executed a bond, as joint and several obligors thereon, for the sum of Twenty-four Thousand Three Hundred and Thirty-three Dollars and thirteen cents ($24,333.13).  This bond contains the express conditions "that, whereas, the above 'principal' has entered into a contract with the State of

West Virginia for the improvement of a certain highway described as follows: Section No. 6 East Bank—West, paving 2.63 miles; and, Whereas, it was one of the conditions of the award of the State of West Virginia, pursuant to which said contract was entered into, that these presents should be executed. Now, Therefore, if the above 'principal' as Contractor, shall in all respects comply with the terms of the contract and conditions of said contract, and his, their or its obligations thereunder, including the specifications therein referred to and made part thereof, and such alterations as may be made in such specifications as herein provided for, and shall well and truly, and in a manner satisfactory to the State Road Commission of West Virginia, complete the work contracted for, and shall save harmless the State of West Virginia from any expense incurred through the failure of said Contractor to complete the work as specified or for any damages growing out of the carelessness of said Contractor or his, their or its servants, or for any liability for payment of wages due or material furnished said Contractor, and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them, or any of them, for all such labor and materials for which the Contractor is liable. And also shall save and keep harmless the said State of West Virginia against and from all losses to it from any cause whatever, including patent, trade-mark, and copyright infringements in the manner of constructing said section of roadway; then this obligation to be void or otherwise to be and remain in full force and virtue.''

The West Virginia Sand & Gravel Company, a corporation, was and is engaged in the business of selling and furnishing materials used in the construction and repair of roads. On the order of Fogle & Company said Sand & Gravel Company furnished materials of the value and price of Ten Thousand and Seven Hundred Dollars ($10,700.00), which were used in the repair and construction of the said highway between East Bank and Cabin Creek. The contractor, Fogle & Com-

pany, failed to pay for the materials furnished. In a suit
to which the plaintiff was not a party, Fogle & Company was
taken over by a receiver. The work on the road, for which
the materials were furnished in this case, had just been com-
pleted prior to the appointment of said receiver. When
the Sand & Gravel Company was not paid for the materials
furnished by it, which were put into the project covered by
the bond and contract, it proceeded at law upon the bond
hereinbefore described. A notice of motion for judgment
was fully served on the defendant, Royal Indemnity Com-
pany. When motion for judgment was made before the
Circuit Court of Kanawha County, the defendant appeared
and demurred to the notice. The demurrer was sustained,
and several questions were certified to this court.

The first ground of demurrer is that the bond set up in
the notice shows on its face that it was given to secure the
performance of a contract entered into by Fogle & Com-
pany with the State of West Virginia, and not a contract
with the County Court of Kanawha County, wherefore there
should be no liability on the surety for materials furnished
Fogle & Company for doing work under a contract, other
than that mentioned in the bond. The bond sued on in this
case is set out in *haec verba* in the notice. The obligee in
the bond is the State of West Virginia, but we take it no
point could be made on this, if the contract which the bond
was given to secure was one between Fogle & Company and
the County Court of Kanawha County; but it will be ob-
served that it is stated in the bond that the principal, that is
Fogle & Company, had entered into a contract with the State
of West Virginia for the improvement of a certain highway,
which is. then described, and bond was given to guarantee
the performance of that contract. The notice alleges that the
West Virginia Sand & Gravel Company furnished the ma-
terials sued for, for the purpose of constructing the road
under contract between Fogle & Company and the County
Court of Kanawha County. It will be seen that there is no
relation between the contract, on which the motion is based,
and the contract referred to in the bond. The former con-

tract was with the County Court of Kanawha County, according to the allegations of the notice, and the latter contract with the State of West Virginia. An instrument may be declared on according to its legal effect or in *haec verba.* Where the bond which is declared on is in writing, as in this case, the insertion of a copy of it in the complaint is the simplest and most satisfactory mode of showing to the court its purport and legal effect. But to enable the pleader to adopt the latter mode the instrument which is thus adopted as a part of the complaint must show upon its face in direct terms, and not by implication all the facts which the pleader would have to allege under the former mode of pleading by averment. 31 Cyc. 66. To give to the bond the construction that its words plainly import would be to negative the fact that it was a bond given to guarantee the performance of the contract which is the basis of the motion. However, it was stated on the argument of the case, that the bond was drawn on a form used where highways are constructed by the State, and that, in the preparation of the bond here under consideration, by inadvertence the name of the obligee was not changed from the printed form. That wherever the name the State of West Virginia appears in the bond, there should appear the name of the County Court of Kanawha County. This inadvertence in the statement of the bond could have been explained and justified by proper pleading. It does not appear that such pleading was proffered by way of amendment by the plaintiff, and the court was justified for this reason in sustaining the demurrer to the notice, had this been the sole question challenging its sufficiency. Would an amendment to this effect make the motion good on demurrer? To a determination of this question it will be necessary to consider other grounds raised on demurrer and certified here. These questions will be considered as if such amendment had been made.

It is urged that this suit cannot be maintained for the benefit of the Sand & Gravel Company because of the condition in the bond relied upon, for the reason that said condition is either, first, surplusage in said bond, the same

being a statutory bond and the condition in excess of that
required in the statute; or, second, a condition beyond the
power of the county court to prescribe; or, third, not a con-
dition for the benefit of third parties with whom the con-
tractor might deal. The defendant company cites the fact
that section 104, chapter 43, Code, provides that the con-
dition of the bond to be taken by the county court shall be
for the faithful performance of the contract; and that any-
thing in excess of this requirement will be treated as sur-
plusage, and the bond held to be good only as to the condi-
tion prescribed by the statute. , In support of this position
it cites 4 R. C. L. 14; *Peck* v. *Dawson,* 85 W. Va. 353;
*Chambers* v. *Cline,* 60 W. Va. 588. These authorities lend
support to the abstract proposition that the county court
cannot go beyond the authority bestowed upon it by the
statute in taking bonds. This proposition is made the basis by
the defendant, Royal Indemnity Company, for the contention
that the bond here, in so far as it undertakes as a condition
''for any liability for payment of wages due or material
furnished and shall well and truly pay all and every person
furnishing material or performing labor in and about the
construction of said roadway,'' is void, for the reason that
the county court had no power to exact it. It maintains that
the county court, not being a sovereign body, possesses only
such powers as have been conferred upon it by the legisla-
ture. It must be, and is conceded that a municipal corpo-
ration has no general authority to make contracts, and its
contracts, to be valid, must be within the scope of the author-
ity conferred upon it by law, and for the purposes of the
municipality; those essential to the declared aim and pur-
poses of the corporation—not simply convenient, but indis-
pensable. *Thomas* v. *Port Huron,* 27 Mich. 323; *Lynchburg*
v. *Dameron,* 95 Va. 545. But municipal corporations have,
not only the rights and powers expressly granted them, but
also such implied powers as are necessary to carry into full
effect those expressly granted. ''Their contracts will be
valid when made in relation to objects concerning which
they have a duty to perform, an interest to protect, or a right

to defend." *Vincent* v. *Nantucket,* 12 Cush. 105. Chapter
43 of the Code, relating to public highways, gives to the
county court the right to contract, pay for making, improving
and keeping in order the whole or any part of any county-
district road within the county. It is given power to per-
manently improve the same by the use of asphaltum, con-
crete, brick, stone, block, or by macadamizing or other pro-
cess of equal merit, and contract therefor with any' con-
tractor for the use of the foregoing systems, and further re-
quires that it take bond of said contractor for the faithful
performance of its contract. These powers and duties are
express.. Can it be doubted that under these express powers
would be also necessarily and fairly implied the authority
to provide by contract every detail of the duty of the con-
tractor? The power to make improvements and to let
contracts therefor and to exact of the contractor a bond for
the faithful performance of his contract necessarily implies
the power to do everything necessary for the faithful per-
formance of the work, for the protection of the county and
its citizens, and for securing the best and lowest possible bids.
We are unable to conceive of any manner of detail incident
to a contract and the work that the county might not require
that a private person could require. *Knapp* v. *Swaney,* 56
Mich. 345, was a case in which the county by provision in the
bond protected the materialmen. As here, the statute there
did not expressly confer this power upon the municipal body.
The court said: "But it is said that among the conditions
is one which the corporate board had no right to impose,
because it did not concern the public, but was a matter
exclusively between the contractors and those who should deal
with them. It is for this reason that the condition is assumed
to be *ultra vires.* And, had the condition been made the sub-
ject of independent contract, instead of being incorporated
in a contract for a proper public work, the objection to it
would have been insurmountable. Whether it was invalid here
is a very different question. The purpose of the stipulation is
very manifest. It is that a contract the county has made shall
not be the means of mischief to those who, though not con-

tractors with the county, may perform labor or furnish materials in reliance upon the moneys to be paid under it. It would seem that to prevent such mischief was a proper object to be had in view by any public board when entering into a public contract. It would seem that there was a moral obligation in the case which the board might well recognize, even though not compellable to do so. And individuals clothed with public functions, even when constituting a corporation, are no more excused from moral obligations than when acting in a private capacity." A case directly in point is that of *Columbia County* v. *Consolidated Contract Company,* 83 Ore. 251, where it is held that "public corporations, such as a county, though not expressly authorized by enactment, have the power to require bond from contractors for public work to pay for all labor and materials furnished in the performance of such work." Here, as in ·the instant case, the county in the construction of a public highway exacted a bond of the contractor to protect materialmen. The court in its opinion said: "By the great weight ⌐of authority public corporations, although not expressly authorized by enactment, have the power to require a bond from contractors for public work, to pay for all labor and materials furnished in the performance of such work. See note to *Denver* v. *Hindry,* 11 L. R. A. (N. S.) 1028; note to *Nat. Surety Co.* v. *Hall-Miller Decorating Co.,* 46 L. R. A. (N. S.) 326; *United States Gypsum Co.* v. *Gleason,* 17 L. R. A. (N. S.) 908. The statute should be liberally construed to effectuate its purpose. The defendant executed the bond with knowledge of the legislative intent, and, as the purpose was not immoral or illegal, they cannot now be heard to deny their liability voluntarily assumed by the execution of the written obligation. *Standard Furniture Co.* v. *Henningsen,* 40 Wash. 87; *Philadelphia* v. *Nichols Co.,* 214 Pa. 265; *Board of Education* v. *Grant,* 107 Mich. 151." "It seems to be also well established by repeated adjudications that municipal corporations may exercise all powers within the fair intent and purpose of their creation, which are reasonably proper to give effect to the powers expressly

granted; and that in so doing they have the choice of the means adapted to the ends and are not confined to any one mode of operation. The latter view seems much more consistent with reason, since the grant of power to a municipality is a grant not to a private company for personal use or profit, but to a public institution for the public welfare." 28 Cyc. 263. The statute, chapter 43, section 104, Code, requires a bond from the contractor to be taken. The conditions of the bond, are not specified, except that it shall be "for the faithful performance of his contract." The form and conditions of said contract in a measure are left to the discretion of the county court as to the county-district roads under the direction of the State Road Commission. The question, then, resolves itself into this: Is the requirement of the contract and condition of the bond above quoted, in relation to the compensation to laborers and material-men, a proper and reasonable incident to the express power given the county court by statute to construct county-district roads by contract and require a bond of the contractor? The moral obligation to do this is undoubted. We think it a proper incident to carry into effect the express power conferred upon the municipality by the legislature. But, if this were not true, the plaintiff contends that the county court is authorized to protect material-men in section 12 of chapter 75, Code. This will involve a consideration of the mechanic's lien statute.

As a general rule, public property is not subject to liens created by chapter 75, Code; such encumbrances being contrary to public policy. By section 12, the State Board of Control, county courts, boards of education, boards of trustees, and all other legal bodies having authority to contract for the erection, construction, improvement, alteration and repair of any public building or structure, used or to be used for public purpose, are directed in so contracting to require the person or persons to whom it shall award any such contracts to execute a good, valid, solvent and sufficient bond, in an amount at least equal to the reasonable costs of the materials, machinery, equipment and labor required in the completion of the contract, upon the condition that in the

event such contractor shall fail to pay in full for such materials, machinery, improvement, alteration or repair of such building, or other structure used or to be used for public purposes, the bond and the sureties thereon shall be liable to the person who has furnished such material, machinery, equipment or labor for the full payment of the expenses incurred by him in that behalf. *Iron Works* v. *County Court*, 89 W. Va. 367. The intended and clearly disclosed purpose of this section is to make it the duty of the corporation and board therein specified to demand and exact a bond in a definite amount, the contract price of the work to be done, the labor to be performed and the equipment to be furnished to complete such public building or other structure, to serve in place and stead of the lien provided for in said chapter, for materials, machinery, equipment and labor used and furnished in the building or other structure for public purposes. Does the public highway, which the county court is vested with authority under chapter 43, section 104, to permanently improve and construct, fall within the purview of this statute? It will depend upon whether the section of said highway, such as was constructed under this contract, is a structure. In construing the meaning, we are entitled to consider the purpose of the statute and the context in which it is found, as well as the meaning which the word would have of itself. The purpose of the mechanic's lien law was to secure greater protection and security for workmen. In *Nash* v. *Commonwealth*, 174 Mass. 335, an aqueduct was held to be a structure, in a statute similar to ours. In its opinion the court said: "The first question is whether the petitioner's claim is within Pub. Sts., c. 16, sec. 64 [providing that when public works are to be constructed, on which liens may attach for materials, the Commonwealth shall obtain sufficient security for the payment by the contractors for all materials used in said construction]. We think that it is. It appears from this contract that the aqueduct to be built was a large, closed aqueduct, of masonry, about a mile long, in this State, and a part of the Metropolitan water system. It was to be built partly underground and partly upon em-

bankments. We can have no doubt that such an aqueduct was a structure, within the meaning of the statute, and that if it belonged to a private individual, a lien for labor performed and furnished and for material furnished and actually used, in its construction, could have been established.'' In *National Works* v. *Oconto Water Company,* 52 Fed. Rep. 43, pipes for the water system of the City of Oconto, which had been laid beneath the street and connected with the pumping works and wells of the defendant, were held to be a structure. The court in *Giant Powder Company* v. *Oregon Pacific Ry. Co.* (Ore.), 8 L. R. A. 700, said: ''A railway is literally and technically a 'structure.' It consists of a bed or foundation, which may be of earth, stone, or trestle work, on which are laid the ties and rails. These taken together constitute a 'structure' in the full sense of the word—a something joined together, built, constructed.'' In that case it was held that a lien may be enforced against the particular portion of the road upon which services are performed or material furnished. The word structure has been used to include a derrick on an oil lease. *Showalter* v. *Lowndes,* 56 W. Va. 463. Likewise, an oil well. *Oil Company* v. *Wenner,* 71 W. Va. 477. Also a railroad on land. *Lumber Company* v. *Wetzel,* 69 W. Va. 689. In its widest sense, any production or piece of work artificially built up, or composed of parts joined together in some definite manner, is a structure. 36 Cyc. 337. Thus we find that the term structure, when applied to material things made by human labor, whether considered etymologically or with reference to common usage, or with regard to the words by which it is immediately preceded in the statute, means something composed of parts and portions which have been put together by human exertion. It would seem plain that a section of the improved public highway, when ready for its useful purpose of travel, is a structure in a literal sense, composed of concrete, rock, sand and earth, fashioned into a symmetrical whole, and when considered in connection with the structures named specifically in the statute, it must, we think, be considered as within the legislative intent in the use of the statu-

tory phrase "or other structure." Thus we conclude that in view of section 104, chapter 43, and section 12, chapter 75, Code, the county court was clearly within its right in writing into the bond a provision to protect material-men and laborers. True, the former statute requires a bond in a sum equal to fifty per cent. of the estimated cost of the work, while the latter requires it to be a sum equal to at least the reasonable cost of materials, machinery, equipment and labor required for the completion of the work. By reading them together, the court is empowered to take a bond large enough to protect the county in a proper performance of the work, and also laborers and material-men. Whether the county court would have a right to take a bond to secure itself in the faithful performance of the contract, as well as a separate bond to protect laborers and material-men, is a question which we are not called upon to decide here.

The last question certified is that no suit at law can be maintained by this plaintiff, or on its behalf, upon the bond set up and referred to in the notice. The plaintiff maintains that this action at law is brought in the name of the State of West Virginia, by an injured party, as allowed by section 2, of chapter 10, Code. Such a bond as here considered is not an official bond within the meaning of the section referred to. *County Court* v. *Fidelity & Guaranty Co.*, 87 W. Va. 504. It further maintains its right under chapter 99, section 16, of the Code, which provides: "A court of equity shall not have jurisdiction of a suit upon a bond, note, or writing, by an assignee or holder thereof, unless it appear that the plaintiff had not an adequate remedy thereon at law." However, the defendant, Royal Indemnity Company, contends that the action cannot be maintained at law and cites in support of this proposition chapter 71, section 2, Code. This section provides as follows: "If a covenant [in an instrument] or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise." The bond

in question here was given not only for the protection of the County Court of Kanawha County in the faithful performance of the contract by the contractor, but was also given to indemnify any person furnishing labor and materials to the contractor in doing the work. It will thus be seen that said bond was not for the *sole benefit* of those furnishing materials and labor to the contractor, of whom the plaintiff was one. It was first for the benefit of the County Court of Kanawha County; and, second, for the benefit of those furnishing material and labor to the contractor. It is admitted that where a covenant is made for the *sole benefit* of one with whom it is not made, such party for whose benefit the covenant was made may maintain an action at law thereon. The case here is controlled by *King* v. *Scott,* 76 W. Va. 58. There it was held that said section 2, of chapter 71, Code, quoted above, does not authorize one not a party to a contract made for his benefit to sue thereon in a court at law, unless such contract was made for his *sole* benefit. His remedy was there held to be in equity. This doctrine is supported in *Johnson* v. *McClung,* 26 W. Va. 659 and *Petty* v. *Warren,* 90 W. Va. 397. The same statute in Virginia was given like effect. *Thacker* v. *Hubard,* 122 Va. 379. It has been held that where a provision is made for a whole class, such class may be treated as one person in applying that statute. One of the class may sue alone. *Jenkins* v. *C. & O. Ry. Co.,* 61 W. Va. 597. However, when in this case we treat all of those belonging to the class of persons furnishing material and labor to the said contractor as a single person or entity, we find that there is another person interested in a different way and by a different right in the contract sued upon. It was urged by way of argument that it would be unjust to permit those furnishing labor and material to the contractor to sue on this bond and exhaust the penalty of it and leave the County Court of Kanawha County without a remedy for any loss it might sustain had the contractor failed to complete his work. This contention is not without force. Page on Contracts, 2386, is authority for the statement that this statute is said to have been enacted in order

to prevent the promisor from being exposed to a double liability. Under our statute and decisions of this court, it is plain that the plaintiff's remedy. is in equity. There it will ultimately obtain such relief as it is entitled to, in such manner as will amply protect the rights of other interested parties.

*Ruling affirmed.*