GINA M. GROH, CHIEF JUDGE
Now before the Court is Defendant Berkeley County Solid Waste Authority's (the "Solid Waste Authority") Second Motion for Summary Judgment, [ECF No. 74] filed on November 8, 2018. Plaintiff Lemartec Corporation ("Lemartec") filed a Response in Opposition [ECF No. 82] on November 28, 2018. The Defendant filed a Reply in Support of its Motion [ECF No. 83] on December 12, 2018. Accordingly, the matter has been fully briefed and is now ripe for review. For the following reasons, the motion is granted in part.
I. Factual and Procedural Background
This lawsuit arises from the construction of a waste-to-fuel processing plant in Martinsburg, West Virginia (the "Project"). ECF No. 1, 18. The background of the Project is as follows. In 2010, the Solid Waste Authority entered into a long-term lease with Defendant Entsorga West Virginia, LLC ("Entsorga WV"). Under the lease, Entsorga WV was tasked with developing a processing plant that could turn solid waste into fuel. In March 2016, Entsorga WV appointed Chemtex International, Inc. ("Chemtex") to serve as the general contractor on the Project. Chemtex entered into a subcontract with Lemartec. Shortly thereafter, Chemtex assigned its interest in the subcontract to its wholly-owned subsidiary, Biochemtex S.p.A. ("Biochemtex"). Throughout the Project, Lemartec alleges that Pier Cella ("Mr. Cella") acted as an agent of Entsorga WV and/or Defendant Entsorga USA, Inc. ("Entsorga USA"), and, in that capacity, actively participated in all aspects of the Project. Lemartec states that Biochemtex failed to pay Lemartec for the services and materials it provided to the Project. Lemartec further alleges that the financial situation with Biochemtex caused Lemartec to consider terminating its relationship with the Project.
However, in June 2017, Entsorga WV terminated the contract with Biochemtex and began direct negotiations with Lemartec to complete the work on the Project. Lemartec asserts that Entsorga WV promised to pay Lemartec for all the work performed on the Project, including the work performed as a subcontractor for Biochemtex. Thereafter, the parties reached an agreement and executed a Memorandum of Understanding and Limited Notice to Proceed ("MOU"). Lemartec recommenced construction in August 2017. Lemartec alleges that Entsorga WV failed to pay Lemartec for the services it performed, so Lemartec stopped work on the *729 Project. On February 7, 2018, Lemartec filed a mechanic's lien against the Project, claiming that Entsorga WV owes it $ 1,694,192.60.
On the same day, Lemartec filed the complaint in this action seeking enforcement of the mechanic's lien and alleging breach of contract, or in the alternative, unjust enrichment against Entsorga WV and the Solid Waste Authority. As an alternative ground of recovery, Lemartec alleged tortious interference of contract by Entsorga USA. Specifically, Lemartec stated that Entsorga USA's director Mr. Cella intentionally interfered with the MOU between Lemartec and Entsorga WV by "influencing and/or directing Entsorga WV to reject Lemartec's performance." ECF No. 1 at 8.
On April 5, 2018, Entsorga USA filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that "Lemartec cannot plead or prove an essential element of their case-that the intentional act of interference be by a party outside the contractual relationship or expectancy." ECF No. 18 at 5. Specifically, Entsorga USA averred that it is a member and agent of Entsorga WV, and so, it is not a party outside the contractual relationship or expectancy. The Court granted the motion to dismiss but granted Lemartec leave to amend its complaint.
On June 22, 2018, Lemartec filed a motion for leave to amend its complaint. ECF No. 38. The amended complaint sought to add additional causes of action against the initial Defendants-Entsorga WV, Entsorga USA, and the Solid Waste Authority. The amended complaint also added new Defendants who are "responsible for Lemartec's damages and who participated substantially in the project in question." ECF No. 39 at 2. On September 6, 2018, the Court granted leave to amend in part. ECF No. 52.
The Amended Complaint charges: (1) enforcement of mechanic's lien; (2) breach of contract; (3) in the alternative, unjust enrichment or quantum meruit; (4) in the alternative, failure to post bond; and (5) joint venture. Now, the Solid Waste Authority moves for summary judgment on Counts I, II, IV and V. ECF No. 74.
II. Applicable Legal Standards
Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250, 106 S.Ct. 2505.
The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence establishing there is indeed a genuine issue for trial. Fed. R. Civ. P. 56 ; Celotex Corp., 477 U.S. at 323-25, 106 S.Ct. 2548 ;
*730 Anderson, 477 U.S. at 248, 106 S.Ct. 2505. "If the evidence § is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249, 106 S.Ct. 2505 (citations omitted).
"Generally speaking, 'summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). A motion for summary judgment should also be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967) ; see also id. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").
III. Discussion
A. Count I - Enforcement of Mechanic's Lien
First, the Solid Waste Authority moves for summary judgment on Count I of the Amended Complaint, charging enforcement of mechanic's lien. ECF No. 54 at 8. The Court already granted summary judgment for the Solid Waste Authority on this issue. See ECF No. 55. For the reasons provided in the Court's previous Order [ECF No. 55], the Defendant's Motion for Summary Judgment as to Count I is GRANTED .
B. Count II - Breach of Contract
Next, the Solid Waste Authority moves for summary judgment on Count II of the Amended Complaint, charging breach of contract. ECF No. 54 at 8. Lemartec does not assert a breach of contract claim against the Solid Waste Authority. See ECF No. 82 at 6 n. 2., ECF No. 54 at 8-9. Accordingly, the Defendant's Motion for Summary Judgment as to Count II is DENIED AS MOOT .
C. Count IV - Failure to Post Bond
Third, the Solid Waste Authority moves for summary judgment on Count IV of the Amended Complaint, charging failure to post bond. ECF No. 54 at 9. The Solid Waste Authority argues that West Virginia Code § 38-2-39 does not create a cause of action against a public entity for failing to require a bond of its contractor, and even if it did, the statute does not apply to the Solid Waste Authority in this case. ECF No. 75 at 12-13.
1. Applicable Law
West Virginia Code § 38-2-39 provides, in pertinent part:
It shall be the duty of [certain public entities] to require of every person to whom it shall award, and with whom it shall enter into, any contract for the ... construction ... of any such public building or other structure used or to be used for public purposes, that such contractor shall cause to be executed ... a good, valid, solvent and sufficient bond, in a penal sum equal at least to the reasonable cost of the materials, machinery, equipment and labor required for the completion of such contract ... in the event such contractor shall fail to pay in full for all such materials, machinery, equipment and labor delivered to him for use ... construction ... of such public building or other structure, or building or other structure used or to be used for public purposes, then such bond and the sureties thereon shall be responsible to such materialman, furnisher of *731 machinery or equipment, and furnisher or performer of such labor ... for the full payment of the full value thereof.
W. Va. Code § 38-2-39.
Thus, in the construction of a public property, the statute imposes an obligation upon public entities to require their contractors to secure a bond in the amount of the project. If the contractor does not pay its subcontractors, the statute requires that the bond be used to pay the subcontractors in full.
2. Analysis
The Solid Waste Authority relies upon J.E. Moss Iron Works v. Jackson County Court, 89 W.Va. 367, 109 S.E. 343 (1921) and argues that the statute does not create a cause of action against a public entity for failure to require a bond. Lemartec contends that the Solid Waste Authority construes J.E. Moss Iron Works too broadly, and that the statute raises an implied cause of action under Hurley v. Allied Chemical Corp., 164 W.Va. 268, 262 S.E.2d 757 (1980).
In J.E. Moss Iron Works, the Jackson county court contracted with Prescott Construction Company to construct and repair the county courthouse and jail. 109 S.E. at 344. Prescott Construction Company subsequently subcontracted with Huntington Iron Works to furnish some materials and perform certain parts of the work. Id. Although the Jackson county court paid Prescott Construction Company pursuant to the terms of their contract, Prescott Construction Company failed to pay Huntington Iron Works. Id. Huntington Iron Works then filed a mechanic's lien on the project, arguing that West Virginia Code § 38-2-39 and § 38-2-23 permitted it to file and enforce the lien on the courthouse and jail.[1] Id. at 345. In the alternative, Huntington Iron Works argued that the Jackson county court should be held liable for damages because it failed to require its contractor to secure a bond.
The West Virginia Supreme Court held that West Virginia Code § 38-2-39 and § 38-2-23 do not permit a contractor or his subcontractor to acquire a lien upon public property. Id. The court further held that "a county court is not responsible in damages." Id. at 348. In so holding, the court reasoned that, "[i]f a subcontractor undertakes to equip [a public building], it only devolves upon him to refuse to furnish the equipment, unless the bond required is given, as it is mainly to protect him." Id. at 346. Thus, because the subcontractor and county court "had the same opportunity to know legislative requirement for a bond ... the neglect to demand it is as much the fault of one as the other." Id. at 348. Accordingly, the West Virginia Supreme Court held that the Jackson county court was not liable for failing to require its contractor to secure a bond.
Lemartec argues that J.E. Moss Iron Works is distinguishable from the instant case because county courts experience immunity while the Solid Waste Authority can "sue and be sued." See W. Va. Code § 22C-4-23. However, the West Virginia Supreme Court never refers to the court's immunity in deciding the case. Rather, the court reasoned that the subcontractor could have demanded the requisite bond before beginning work on the project. The subcontractor's failure to do so was squarely its own fault; thus, the subcontractor could not later seek to impose damages upon the county court. Similarly, Lemartec could have demanded a *732 bond before beginning work on the Project. Lemartec's failure to do so lies solely upon it, not the Solid Waste Authority. While the Solid Waste Authority can sue and be sued, the West Virginia Supreme Court's holding in J.E. Moss Iron Works makes it clear that the Solid Waste Authority cannot be sued for failing to require its contractors to secure a bond.
3. Conclusion
Accordingly, the Defendant's motion as to Count IV is GRANTED .
D. Count V - Joint Venture
Finally, the Solid Waste Authority moves for summary judgment on Count V of the Amended Complaint, charging joint venture. The Solid Waste Authority argues that it is not part of a joint venture with any other party. Lemartec argues that "summary judgment is inappropriate because Count V raises fact intensive questions, and Lemartec has yet to enjoy opportunity for discovery." ECF No. 82 at 13.
1. Applicable Law
A joint venture is "an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied." Syl. pt. 5, Armor v. Lantz, 207 W.Va. 672, 535 S.E.2d 737, 739 (2000) (citation and quotation marks omitted). Members of a joint venture are "jointly and severally liable for all obligations pertaining to the venture, and the actions of the joint venture bind the individual co-venturers." Id. at 743.
2. Analysis
The Solid Waste Authority argues that it cannot be deemed to be a joint venturer with any of the other Defendants in this case because there is no contract whereby the parties agree to contribute to an enterprise and to share in the profits therefrom. ECF No. 75 at 16. Specifically, the Solid Waste Authority argues that it: (1) "has not provided any capital or financing to the enterprise"; (2) "has no ownership, no equity, and no decision-making authority in the enterprise"; (3) "has no right to share in the profits from the enterprise"; and (4) has "no responsibility ... to shoulder any part of any losses." ECF No. 83 at 5-6.
However, whether a joint venture exists is a question of fact. "Generally speaking, 'summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). Here, Lemartec avers that it has had "no opportunity to engage in discovery that will establish the nature of the [Solid Waste Authority's] relationship with the codefendants." ECF No. 82 at 14. Moreover, although discovery does not close until April 12, 2019, Lemartec has already provided emails demonstrating how the Solid Waste Authority might benefit from the Project's permitting fees. See ECF No. 82-6.
Thus, given the early nature of this motion and the very limited factual information that Lemartec has submitted, the Court finds that a question of material fact remains as to whether the Solid Waste Authority engaged in a joint venture.
3. Conclusion
Accordingly, the Defendant's motion for summary judgment is DENIED AS PREMATURE as to Count V. The Court grants the Solid Waste Authority leave to *733 refile its motion upon the close of discovery.
IV. Conclusion
For the aforementioned reasons, the Court ORDERS that the Defendant's Second Motion for Summary Judgment [ECF No. 74] is GRANTED IN PART . Specifically, the motion is GRANTED as to Counts I and IV, DENIED AS MOOT as to Count II and DENIED AS PREMATURE as to Count V.

The code sections have changed since J.E. Moss Iron Works was decided. However, the statutes cited in the case are substantively the same as W. Va. Code § 38-2-39 and § 38-2-43.