# CHARLESTON.

PFAFF & SMITH BUILDERS SUPPLY CO. *v.* THOMAS J. MASON
*et als., Trustees, etc.*
*The Metal Products Company, Appellant.*

(No. 5712)

Submitted March 1, 1927.   Decided March 8, 1927.

1.  MECHANIC'S LIENS—*Where Right to Mechanic's Lien is Clear
    and Controversy is Whether Lienor Properly Perfected and
    Preserved Lien, Liberal Construction Should be Applied
    (Code, c. 75, § 3).*

    Where there is a clear right to a mechanic's lien under the
    statute and the controversy is whether the lienor has properly
    proceeded to perfect and preserve his lien, a liberal construc-
    tion should be applied. (*Lumber Co.* v. *Coal Co.*, 101 W. Va.
    567; *Georgia Lumber Co.* v. *Harrison Construction Co.*, 103
    W. Va. 1, 136 S. E. 399).   (p. 319).

    (Mechanic's Liens, 40 C. J. § 14.)

2.  SAME—PLEADING—*Where Bill Contains Specific Allegation of
    Material Fact, better practice is to Except to Answer not
    Denying all Material Allegations of Bill; if no Exceptions
    to Answer not Specifically Denying all Material Allega-
    tions of Bill Are Taken, Generally Plaintiff Must Prove
    Specific Allegations of Material Fact in Bill, But Proof
    May be Waived; Notice of Lien With Stipulation Held
    Sufficient Evidence of Giving it Within 60 Days of Fur-
    nishing Material (Code, c. 75, § 3 [b], and c. 125, § 36,
    and c. 129, § 11).*

    Where there is a specific allegation of a material fact in the
    bill, and the answer is general in denial, but does not specifi-
    cally deny all the material allegations of the bill, it is safer
    and better to except to the answer in that regard; and if no
    exceptions are made, generally the plaintiff is put to proof
    of such allegation.   Necessity of proof in such case may be
    waived by agreement.   (p. 323).

    (Evidence, 22 C. J. § 385; Mechanic's Liens, 40 C. J. § 607
    [Anno].)

3.  SAME—*Owner not Recording Contractor's Bond Against
    Liens is Liable for Materials (Acts 1917, c. 6).*

    Where the owner enters into written contract with a con-
    tractor to erect, complete and turn over to him a building, the
    contractor to furnish all labor and material, at a stated price

for the completed job, and he takes from the contractor a bond
with surety conditioned, among other things, to save the
owner harmless from all perfected liens for material and
labor which may be taken on the property, but fails to record
such contract and bond, he thereby makes the contractor his
agent, and his property (his interest in the building and
land), is liable for such perfected liens for materials which
have been furnished therefor, under chapter 6, Acts 1917.
(p. 326).

Mechanic's Liens, 40 C. J. § 483 [Anno].)

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
·part of syllabi.

Appeal from Circuit Court, Kanawha County.

Suit by the Pfaff & Smith Builders' Supply Company
against Thomas J. Mason and others, trustees of the Charles-
ton Baptist Church, to enforce a materialman's lien, in which
the Metal Products Company intervened.    From the judg-
ment the Metal Products Company appeals.

*Reversed and remanded.*

*Davis & Painter* and *Joe L. Silverstein,* for appellant.

*Price, Smith & Spilman,* for appellees Standard Acc. Ins.
Co. and others.

LIVELY, JUDGE:

The validity of a materialman's lien is here involved.

The Charleston Baptist Church through its Trustees,
Thomas J. Mason and others, contracted the erection of its
church with Ring-Hartman Company, a corporation, which
gave bond with defendant, Standard Accident Insurance
Company as surety for the faithful performance of the con-
tract and to indemnify against mechanics and materialman's
liens.  Later Pfaff & Smith Builders Supply Company insti-
tuted this suit in the Court of Common Pleas to enforce its
materialman's lien, and Metal Products Company, appellant
herein, came into the suit by petition to enforce its lien for
specially fabricated steel trench covers furnished the con-
tractor, and the validity of that lien is here involved.    It
amounts to $444.78, including interest at date of ·decree.    The
decree appealed from, entered July 13, 1926, denied the
claim as a lien upon the church property, and required appel-

lant to pay a proportion of the costs. By order of April 5, 1926, the Circuit Court refused the appeal, being of the opinion the decree of the Court of Common Pleas was plainly right.

The answer of Standard Accident Insurance Company charges that Metal Products Company's purported lien is invalid; that petitioner failed to perfect its alleged lien; that its notice of lien filed in the County Clerk's office is wholly insufficient under the statute, as set out in sub-section (b) of Sec. 3, chap. 75 of the Code.

The cause was referred to a Master Commissioner who reported petitioner's claim as a valid lien, to which report exceptions were taken by Standard Accident Insurance Company, and the Court sustained the exceptions. The exceptions are: (1) That said lien was not perfected because no proper notice thereof was recorded in the County Clerk's office; and because the notice thereof filed in said Clerk's office and not recorded is insufficient under the statute; and (2) That the evidence before the Commissioner shows that the material forming the basis of the lien were never used in the building and never became a part thereof. These exceptions thus sustained, formed the issues, and both were decided against appellant.

Was the lien of appellant perfected as required by the statute?

It appears that appellant is a corporation, and on January 28, 1924, proposed to the Ring-Hartman Company to furnish the trench covers for $420.00 for use in the Baptist Temple Building, which proposal was accepted by Ring-Hartman Company, the general contractor. The trench covers were fabricated in accordance with the plan for the building and were delivered, according to petitioner, inside the building on June 26, 1924. On August 21, 1924, notice was served upon the trustees that certain materials in the nature of steel and iron trench covers had been furnished the general contractor for use in the erection of the building, at a price of $420.00, being for steel and iron trench covers as per specifications; that the same had not been paid, and that a lien was claimed

on the lot and buildings to secure payment. The statements in the notice were sworn to by the president of the corporation; and on August 25, 1924, this notice together with the certificate thereto annexed was filed in the County Clerk's office. The Clerk did not spread the notice in full upon the Mechanics Lien Record. An index of the same was made in the trust deed book indexed as follows: "Baptist Church, Charleston, (Name of Trustee or beneficiary) Metal Products Co., (Book Mch) 1, p. 279, (year of record) 1924, (Description or location) Mch. Lien". The Mechanics Lien Record showed the following: "(Name of Parties) Metal Products Co. v. Charleston Baptist Church, (Amt. and character of claim) $420.; (When filed) Aug. 25, 1924, (Description of property) 2 Lots corner of Morris and Quarrier Streets, City of Charleston". The notice itself remained on file, with the notation thereon by the Clerk "admitted to record". It is stipulated by the parties that such was the usual and customary manner of filing and recording such liens adopted by the County Clerk. On what ground the trial chancellor denied the lien, the decree does not state. The exceptions to the Master Commissioner's report are that the notice of the lien was defective; and that it was not recorded as the statute requires. The notice served on the trustees on August 21, 1924, contains all that is required by sub-sec. (e) Sec. 3, chap. 75 Code. It clearly follows the statutory form, and the account of the claim therein contained as having been furnished the contractor for the building is as follows: "June 26, 1924, Trench covers as per specifications $420. Balance due $420." The notice was sufficient. While the notice was not spread in full upon the Mechanics Lien Record by the County Clerk, there was a sufficient recordation as between the petitioner and the owners of the property in order to preserve and perfect the lien. The surety on the contractor's bond agreed to protect the owners against such liens, and if the validity of the lien against the owners is sustained, the Accident Insurance Company as surety on the bond would be responsible. That delivery of the notice to the County Clerk and by him admitted to record, and the

substance thereof recorded preserves the lien as between the parties, is decided in *Lumber Co.* v. *Coal Co.*, 101 W. Va. 567, handed down May 4, 1926, and in *Doss* v. *Coal Co.*, 102 W. Va. 470, 135 S. E. 575, decided Nov. 9, 1926. See also *Georgia Lumber Co.* v. *Harrison Construction Co.*, 103 W. Va. 1, 136 S. E. 399. It will be noted that these cases, just cited, were decided after the decree appealed from was entered on January 13, 1926, by Court of Common Pleas and appeal therefrom refused by the Circuit Court on April 5, 1926. The first exception to the Commissioner's report should have been overruled. But the second ground of exception to the Commissioner's report, namely, that the evidence shows that the materials were never used in the building and never became a part thereof is urged as barring the alleged lien and as ground for sustaining the decree; and also that the evidence fails to show that petitioner, Metal Products Company, gave notice to the owners that it claimed a lien within 60 days after it ceased to furnish the material for the building. This last point was not made an exception to the Commissioner's report, and seems not to have been raised in the lower court. We will consider these two points. The petition avers that petitioner, Metal Products Company, is a West Virginia corporation, and on June 26, 1924, it delivered to Ring-Hartman Company, general contractor for Charleston Baptist Church, certain trench covers as per specifications; that on August 25, 1924, it served its notice of mechanic's lien, (the notice itself shows it was served on August 21, 1924) and that said notice was filed and recorded in the County Clerk's office August 25, 1924, in Mechanics Lien Book No. 1, p. 279; that said lien was filed within 60 days from the time said materials were delivered to said Baptist Church; and suit thereon was begun within 6 months from the filing of the lien, which has not been paid off and discharged. The answer of Standard Accident Insurance Company (which was permitted to intervene as a defendant to protect its interests as surety on contractor's bond) to said petition avers that Metal Products Company did not at any time have a valid and subsisting lien or claim against the Church

property; that it failed to perfect its lien as provided by statute, and that the lien filed in the County Clerk's office is insufficient to preserve it, and is not in form or effect as prescribed by sub-section (b), sec. 3, chap. 75 Code; and further that there are no valid and subsisting liens properly perfected and preserved as required by law, on the property. We find no replication to the answer. The petition was filed Oct. 28, 1924, and the answer thereto on January 29, 1925. It appears that a decree of reference had been entered Oct. 13, 1924, and was filed on June 13, 1925. The parties appeared before the Commissioner on Feb. 18, 1925, and J. T. Moore, manager of petitioner, testified that his company had contracted in writing with Ring-Hartman Co., the general contractor, to furnish the trench covers with certain measurements and dimensions for $420.00, as set out in the contract therefor filed as an exhibit. He says the detail plan of the trench covers was approved by the architect, James L. Montgomery, after which he immediately began work on the trench covers, the same to be delivered when completed at a time designated by the contractors; that the covers were made according to the plans and were delivered as directed inside the building; that they were not paid for, and he caused notice of lien to be served on the owners; that after the covers were delivered he had visited the building and on one or two visits saws the longest trench cover frames lying over the trenches preparatory to having the permanent base poured around them. Jas. L. Montgomery, the architect in charge of the building, says the trench covers were never used in the building, that he refused to accept them as architect because of premature delivery; that he saw a frame over one of the trenches but it did not remain; that trench covers of a similar nature were afterwards used. He says the trench covers furnished by petitioner could not be used at the time of the delivery because the work was not then ready for them; that Ring-Hartman Company had defaulted on the work and there was no one to set or place them, that this was the only reason why they were not used; that the reason they were not used after the work progressed to a proper

stage, was that the completion of the building had been let to other contractors. After the shop drawings were approved and the covers ordered, it appears that some of the trenches were omitted by the order of the architect. The plans were changed. Why a portion at least of these covers were not used does not appear. The new contractors ordered another set of trench covers which were furnished. It does not appear what became of the old ones. Montgomery says the last time he saw them they were on the church lot. No attempt was made to return them, and so far as petitioner knew, they had been used. It will be observed that there is no evidence of the time when the trench covers were furnished. The contract for them was made in January, 1924. The notice of lien contains the account for the covers which account is dated June 26, 1924. This notice is sworn to, and furnishes the only evidence that the notice of lien was given within 60 days after the material had been furnished. Is this sufficient? The answer does not specifically deny the allegation of the petition that the trench covers were ''delivered inside the Church on June 26, 1924''. It is very general, alleging that there were no valid or subsisting liens upon the property perfected and preserved as required by law; the specific reason for such conclusion being based on insufficiency of notice and its non-recordation; and the report of the Commissioner is not excepted to on the ground that the evidence failed to show delivery of the material within 60 days prior to serving notice on the owners. Those exceptions are based on lack of proper notice and recordation thereof; and failure to show the incorporation of the material in the structure. The point under discussion was not presented to the lower court, and, no doubt, was not considered. Every material allegation of a bill not controverted by the answer shall for the purposes of the suit be taken as true. Chap. 125, sec. 36 Code. *McDermott* v. *Gas Co.,* 82 W. Va. 230. The general rule is that where the bill makes specific allegations of material facts, and the answer does not admit or deny specifically, but says every material allegation is denied and calls for strict proof, this general denial, if not excepted to, will generally be con-

sidered as controverting the specific allegation of facts set out in the bill, and put plaintiff to proof. *Burlew, Trustee,* v. *Quarrier,* 16 W. Va. 108. But there is no general denial of the allegations of the petition in respect to delivery of the material within 60 days prior to the lien notice. The general denial says simply there were no valid and subsisting liens upon the property perfected and preserved as required by law. But a partial or incomplete denial in the answer, does not put the plaintiff to proof in all instances. *Dent* v. *Pickens,* 59 W. Va. 274, 290. There is quite respectable authority which holds that an answer in a mechanic's lien suit, which merely sets up that plaintiff has no lien, or denying that he had complied with the law, or that he is not entitled to a lien, is a mere conclusion of law and raises no issue of fact. 40 C. J. p. 441, sec. 610, citing many cases. To meet this contention of the appellee, appellant relies upon a stipulation which recites that for the purposes of eliminating the necessity of taking evidence in support of the facts therein admitted as required by sec. 11, chapter 129 Code, that the following facts shall be taken and considered in evidence as established: (1) (Agreeing on the amount of certain liens, not material here). (2) That claimant's original notices of mechanics liens filed in the County Clerk's office ''be and the same are filed as evidence of the form and *contents* thereof, except that the validity of the manner of recordation by said County Clerk is not admitted by Standard Accident Insurance Company''. It will be observed that in plaintiff's notice, sworn to, the account therein contained fixes the date of delivery of the material on June 26, 1924 (which is within 60 days prior to the time of service of the notice August 21, 1924). The stipulation says this notice shall be considered as evidence of the form and *contents* thereof, except as to the matter of recordation. Considering this notice as evidence of its contents we have no rebuttal evidence that the material was delivered at any other date. Appellee filed an affidavit before the Commissioner in which it stated that Metal Products Company ought not to maintain its lien because the alleged material was rejected by the contractor and

was never used in the construction of the building, and that no *other* liens appearing on record against the property were properly perfected and are not liens or claims upon the property. This affidavit does not deny directly or by implication that Metal Products delivered the material on June 26, 1924. Evidently appellant relied upon the stipulation, and did not think it necessary to furnish further proof. The Commissioner evidently took the same view, and appellee did not except on that ground. The point seems to be stressed for the first time in this Court. And if we could say the stipulation was equivocal, we would reverse the decree, if this point were controlling, and send it back under the principles announced in *Prickett* v. *Frum,* 101 W. Va. 217; *Indian Refining Co.* v. *Chilton,* 89 W. Va. 481; and *Pauley* v. *Decker,* 89 W. Va. 485; and *Hummell* v. *Marshall,* 95 W. Va. 42; all to the effect that when it is apparent that a cause has not been properly developed because of misconception, and it is apparent that proper evidence exists and can be readily produced, equity will not deprive the party of his rights but will give him opportunity to present his evidence, where the circumstances justify such opportunity.

We now come to the second point relied upon to sustain the decree, namely, that the material was not accepted and was not used in, nor was not necessary to, the completion of the building.

As heretofore stated, appellant says that the trench covers were specially manufactured in length, breadth and thickness, with certain angles, and lugs for lifting, and if not used in the building, were the proper subject of lien, for they could not be used elsewhere. From the substance of the evidence of appellant's witness Moore, and appellee's witness Montgomery (the only witnesses on the point under discussion), it appears that the trench covers were delivered inside the building and the longest ones were actually placed over the trenches (by whom it does not appear) preparatory to pouring of concrete and remained there for some time, but were afterwards, or at least most of them, removed to the lot, and it does not appear what disposition has been

made of them. Appellant was not notified of their rejection, and for all it knew they were used in the structure. There appears to have been no objection to the covers, except that they were delivered at the building prematurely, before the work had progressed so that they could be laid. It does not appear that appellant was advised of this rejection. Montgomery says that some one telephoned him that the material was tendered for delivery and asked if it should be accepted, and he refused to accept it. They were properly manufactured according to the specifications and of good quality. The only reason for not putting them in when the work was ready for them, was that a new contractor had been employed to finish the job (the first contractor having failed), the plans were changed, and the new contractor purchased another set of covers. No one says the covers could not have been used by the new contractor. The architect did not ask him to do so.

Our decisions recognize the general rule that there can be no lien under the statute for material furnished the contractor and not used in the structure covered by the contract. *Cushwa* v. *Improvement Co.,* 45 W. Va. 490; *Lunsford* v. *Wren,* 64 W. Va. 458; *Atlantic Terra Cotta Co.* v. *Moore Construction Co.,* 73 W. Va. 449. The reason for this general rule is that the land and building are liable because of value added; the materialman has added value to the owner's property, and should have a specific lien for his reimbursement to the amount of that value.

There is conflict in the decisions whether specifically fabricated materials designed for use in a particular building, but not used, can be made the basis of a lien. The weight of authority is to the effect that such material, which cannot be readily used in other structures may be the subject of lien. See *Grainger & Co.* v. *Johnson,* (286 Fed. 833), 33 A. L. R. 315, where, in the annotation, the cases are collected.

In 1917, the legislature enacted a statute (chap. 6) whereby the owner could limit his liability where he entered into a contract for the erection of his house, by recording the contract together with a good bond from the contractor, in a

penalty equal to the contract price, conditioned for the payment of liens perfected, where the lienors are deprived by the recordation of the contract from receiving from the owner the amount of their liens. The owner who records his contract and bond is exempt from paying more than the contract price, and his property is exempt therefrom, and such liens as are perfected and are not fully paid by the owner, shall be paid by the contractor and his sureties on his bond. In the enforcement of liens where such contract and bond have been recorded, the contractor and his bondsmen must be made parties, and recovery may be had against them without resort to the law courts. The act provides in sec. 14, that if the owner fails to record his contract and bond, or record the contract without bond, or the penalty of the bond is not equal to the contract price, or the bond is not solvent when given, "then the contractor shall be deemed to be the agent of the said owner", and the interest of the owner in the building and land "shall be held liable and subject to such perfected liens, for the full and true value of all work and labor done, and of all materials, machinery and equipment *furnished therefor*", although the amount may exceed the price stipulated in the building contract. The contract is in the record (not printed), but the bond is not. The bondsman, Accident Insurance Company, intervened and pleaded that it was surety on the contractor's bond and had agreed to save the owners harmless for work and material that might become liens on the property, and asked to be made a party to protect its interest. The presumption is that the bond complied with the statute. The contract appears not to have been recorded. Failure to record the contract accompanied with the bond, makes the contractor the agent of the owner and makes the latter's property liable for all perfected liens for all materials *furnished* therefor. These trench covers, under the statute, were purchased by the owners through Ring-Hartman Company its agents, and were furnished under specifications for the building. We do not think it material to inquire whether these covers were actually incorporated in the building. They were the property

of the owners, purchased by them, and they could not refuse to take them solely on the ground of premature delivery, if they had possession at the time the work was ready. *Emerson Shoe Co.* v. *Neely*, 102 W. Va. 158. The covers were purchased for the building; the contract of purchase expressly says so. Shall the vendor be compelled to sue, and then enforce his judgment lien against the property? The statute seems to give him the right to a lien for material furnished the owner to be used in his building. If the seller is required to sue on the contract at law, other liens may have been taken on the property and the remedy thus rendered unavailing. *Howes* v. *Reliance Wire Works Co.*, 46 Minn. 44, 48 N. W. 448. Judge LITZ in *Georgia Lumber Company* v. *Harrison Construction Company*, 103 W. Va. 1, (136 S. E. 399), denied a lien for material furnished but not used in the building, on the ground that the contractor who purchased the material was not the agent of the owner. Under the facts here shown the contractor was the agent of the owner by virtue of the statute.

The decree will be reversed and the cause remanded to be proceeded with in accordance with the principles herein announced.

*Reversed and remanded.*