## CHARLESTON.

H. W. HICKS, TRADING, *etc. v.* J. M. RANDICH *et als.*

(No. 6262)

Submitted September 15, 1928. Decided September 25, 1928.

*David D. Ashworth and Clay S. Crouse,* for appellant.
*Hubbard & Bacon,* for appellee Republic Casualty Co.

LIVELY, PRESIDENT:

The only question involved in this appeal is whether the plaintiff's claim, which consists of an account for material used in the repair of trucks and the labor expended in placing those repairs, is covered by the contract and bond given for faithful performance of the contract, and for the payment of labor expended and material furnished in and about the construction of the public road.

The case involves the question of the liability of a bonding company as surety on the bond of a contractor for the build-

ing of a public road. It was tried in the lower court on the pleadings and exhibits, and upon an agreed statement of facts. The decree complained of dismissed the plaintiff's bill, and from that decree he appeals.

Randich & Company were awarded two contracts by the county court of Raleigh county for the building of two county-district roads, and was required under the statute and by the contract to execute bonds for the faithful performance of the contract and certain obligations hereinafter fully set out. One bond was in the sum of $47,553.08 and the other for $31,-625.73. The contract is to the effect that the contractor will construct the road according to the advertisements and estimates and will furnish at his own cost and expense all the necessary materials, labor, tools and appliances to build and complete the same, in accordance with the specifications and plans and as set out in his proposal; and the contract mentions that a copy of the bond to secure proper compliance with the contract is attached to and made a part of the contract. The condition of the bond is that if the contractor shall in all respects comply with the terms and conditions of the contract, and shall complete the work, and shall save the county court harmless from any liability or carelessness or negligence in its construction, or liability for payment of wages or materials furnished, "and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them, or any of them, for all such labor and material for which the contractor is liable," then the obligation is to be void, otherwise, to remain in full force and virtue. The two contracts and two bonds are similar, and what· is said of one applies to both. Plaintiff, who was the owner of a garage and kept automobile parts for sale and did repair work on automobiles, repaired, and furnished automobile parts to the contractor's trucks used in the building of the roads, while the building was in progress. The trucks were used by the contractor in hauling crushed stone and the like on the road, and it is stipulated that the material furnished and the repairs and labor supplied were necessary in order that the trucks should be in proper con-

dition to haul the stone and the like, used in the construction; but it is also stipulated that all of the repairs were not totally destroyed by use or otherwise during the progress of the work. An itemized account of the automobile parts furnished and the labor expended is filed with the plaintiff's bill, and amounts to $2,570.77. The amount of the material furnished to repair the trucks and make them fit for operation is largely in excess of the labor performed in placing these repairs on the trucks.

Plaintiff asserts that the surety on the bond, the Republic Casualty Company, is liable for the payment of plaintiff's claim under the bond; whereas the surety company asserts that it is not so liable. The circuit court found in favor of the contention of the surety company and dismissed plaintiff's bill.

A road contractor is required by law to execute a bond. The statutes require a county court or other public body entering into a contract of that character to take from the contractor a bond. Section 104 of Chapter 43 of the Code gives the county court authority to permanently improve its county-district roads and to contract therefor with any contractor, "and take bonds and security in the penalty equal to fifty per centum of the estimated cost of the work in question, from any such contractor for the faithful performance of his contract." It will be observed that this statute only requires a bond for the faithful performance of the contract. And the penalty is only fifty per centum of the estimated cost of the work. There is nothing in that statute which requires a bond to be given for the payment of work and materials furnished by third persons, unless the contract and bond themselves so provide. And third persons would have no claim by virtue of that statute, and none under a bond. But there is another statute, section 12, chapter 75, Code, which makes it the duty of county courts to require every person to whom it shall award a contract for the construction of a public building or other structure to require from the contractor a bond in the penal sum equal at the least to the reasonable cost of the "materials, machinery, equipment and labor required for the completion of said contract, and conditioned that in the event

such contractor shall fail to pay in full for all such materials, machinery, equipment and labor used by him in the erection, construction, improvement, alteration or repair of such public building or other structure, or building or other structure used or to be used for public purposes, then said bond and the sureties thereon shall be responsible to said materialmen, furnisher of machinery or equipment, and furnisher or performer of said labor, or their assigns, for the full payment of *the full value thereof.*" It will be noted that section 104, Chapter 43, of the Road Law, says the county court may take bonds with surety for the faithful performance of the contract, and as above noted, nothing is said about requiring payment for material, machinery, equipment and labor furnished by third persons. The bond in question here does provide for the payment for material and labor used in and about the construction of the roadway. The bond evidently was given in view of section 12 of Chapter 75, which is a mandatory statute requiring bonds for the payment to third persons for materials, machinery, equipment and labor used in the work; and it was an attempt to comply with that statute. In arriving at the intention of the parties in entering into this contract and bond, both statutes must be considered and read *in pari materia.* A permanently improved highway is a "structure" within the meaning of section 12, Chapter 75, Code. *State ex rel. Sand & Gravel Co. v. Royal Indemnity Co.,* 99 W. Va. 277, 43 A. L. R. 552. It will be noted that this section is contained in the chapter on mechanics liens. It is against public policy to have mechanics liens upon buildings and structures used for public purposes. It would hamper the conduct of public affairs to have public property put up and sold at auction under mechanics liens, or like liens; and hence the evident object of the Legislature in enacting this statute was to provide a remedy for laborers and materialmen in payment of their debts equal to that of the mechanics lien. And it will be observed that this statute requires the bond to be sufficient to pay for the reasonable cost of the materials, machinery, equipment and labor used by the contractor in the work. It may be that the statute, rather clear in its terms, was intended to protect the seller of ma-

chinery and equipment used by the contractor. A contractor may have no equipment when he makes his bid and is awarded the contract. That would not necessarily prevent the award of the contract by the county court or other public body, for he gives a bond sufficient to pay for the machinery, materials and labor used therein. A surety company signing such bond for a consideration is supposed to know the capacity and fitness of its principal to perform the work, and no doubt takes into consideration his business ability to meet his obligations for material, machinery and labor used in the contract for which it is surety. However, we are not called upon to determine in this case whether the seller of machinery is protected in the purchase price under a bond given in pursuance of this statute. What we have said is simply indicative of the intention of the act gathered from its terms, its location as a part of the mechanics lien law, and public policy. Again it will be noted that the bond itself requires payment for material used and labor performed *in and* about the construction of the roadway; whereas, the statute requires payment not only for materials and labor, but for machinery and equipment used in the construction of the roadway. Only a part of the requirement of the statute is used in the bond and the question arises whether or not the word "material" as used in the bond, which is a statutory bond, is broad enough to include the repairs placed on machinery for the purpose of making it useful in hauling base rock and slag for the road.

But at this point it is well to note the contention of counsel for the surety company to the effect that this statute, section 12, Chapter 75, Code, cannot be considered as a part of the condition of the bond. It is quite generally held that the statute under which bonds of this character are required and given is to be considered as part of the bond. 9 C. J., p. 34, section 56, says: "The law at the time of the execution of a bond is a part of it; if it gives to the bond a certain legal effect it is as much a part of the bond as if in terms incorporated therein. Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it

will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must have been intended by the statute. Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it.'' In accord are our cases of *State* v. *Wotring*, 56 W. Va. 349; *Wait* v. *Building Ass'n.*, 76 W. Va. 431; *Shull* v. *Fidelity & Guaranty Co.*, 81 W. Va. 184; and *Charleston* v. *Dawson*, 85 W. Va. 353. In *State* v. *Wotring, supra,* point 2 of the syllabus says: ''A bond given under a statute must be construed, as to the scope of its obligation, to cover the objects of the statute in requiring it, if its words will at all allow such construction, and the statute is to be regarded a part of it.'' To the same effect is *State* v. *Nutter*, 44 W. Va. 385. See also *State* v. *Barnes*, 52 W. Va. 85, and *State* v. *Enslow*, 41 W. Va. 744. It was said in the *Wait* case, *supra*, ''that the rule of *strictissimi juris* is not a rule of construction. It is operative only in the application of the contract, after its meaning has been ascertained in the manner in which the intent of the parties to other contracts is found.'' The statute under which the bond was given is read into it, and the liability of the surety is carried on the one hand, and limited on the other, to that which falls within the terms, the words of the contract so read. See *Wait* v. *Building Ass'n., supra,* p. 436. The usual rule of strict construction in favor of a surety is not generally applied where the surety is a corporation, organized for surety purposes for a consideration. The general doctrine is laid down in 32 Cyc., p. 306, as follows: ''The doctrine that a surety is a favorite of the law, and that a claim against him is *strictissimi juris* does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. * * * Their contracts are usually in the terms prescribed by themselves and should be construed most strongly in favor of the obligee.''

The surety company by counsel relies upon the case of *Surety Co.* v. *U. S.*, L. R. A. 1917-A, p. 336, 143 C. C. A. 99, 228 Fed. 577; *Kansas City* v. *Youmans* (Mo.), 112 S. W. Rept. 225; *U. S. Rub. Co.* v. *American Bonding Co.* (Wash.), L. R. A. 1915-F, p. 951; and similar cases, which hold that machinery and appliances furnished the contractor in the prosecution of work do not come within the protection of a bond which was given only to protect persons who furnish labor and material used in the construction or repair of the work. From an inspection of these cases, it is apparent that the statutes under which these bonds were given largely influenced the decisions. The federal statute in *National Surety Co.* v. *U. S., supra,* required that the contractors shall promptly make payments to all persons supplying him or them "labor or materials in the prosecution of the work," and the bond conformed to the statute. In *Kansas City* v. *Youmans, supra,* the charter of the city required bond from the contractors, but they should not be liable beyond the estimated cost of the "materials used and labor done upon the job to be stated in the contract," and it was held that tools, implements and appliances were not *materials* within the meaning of the guaranty that the contractors would pay for materials used in the work of building a sewer; and the fact that the tools and appliances were totally consumed in the work did not change the rule. In *U. S. Rub. Co.* v. *American Bonding Co., supra,* it does not appear what the statute contained, but the condition of the bond was that he should "pay all laborers, mechanics and subcontractors and materialmen and all persons who shall supply such person or persons or subcontractors with provisions or supplies for the carrying on of such work"; and it was held that rubber hose, washers, cup rings, belts, tubing and the like which were not necessarily consumed in the work were a part of the contractor's equipment, and not within the protection of the bond conditioned as above set out. This case more nearly sustains the contention of the surety company in the instant case than the others cited.

On the other hand, appellant's counsel rely upon cases which hold that where a bond is given to protect payment for labor and materials incurred by the principal in carrying out

the contract, the words "labor" and "material" should be given a liberal construction. Illustrative of this line of cases is *Fidelity and Deposit Co.* v. *Mason* (Va.), 133 S. E. 793, where it was decided that under such a bond the services of the superintendent of the work, who did no actual labor on the job as a laborer, was protected by the bond in his salary. That case says: "The intention of the parties in this case and cases of similar character was, not to restrict protection to a certain class of laborer, or a certain class of persons furnishing materials, but the object was to furnish credit to the contractor so that he may be able to secure all classes of labor necessary to prosecute the work and all kinds of material essential to the performance of the work, in order that the contract might be performed, and to this end to protect all persons from whom the contractor might obtain credit for services or wares bearing a sufficiently intimate relationship to the work as to be necessary thereto." See *Rossman* v. *Bankers Surety Co.* (Minn.), 148 N. W. 454, where work of dismantling, shipping, reassembling and putting in repair a dredge was held to be covered by the bond. As above intimated, we must arrive at the intention of the parties under this bond and contract not entirely by the words used therein, it being a statutory bond, but must take into consideration the intent and purpose of the Legislature in requiring such bond as set out in section 12, Chapter 75, Code. It is quite clear that the labor which plaintiff expended on the trucks falls within the strict letter of the bond, for that labor was just as necessary in getting the rock and slag on the road as to have that slag and rock prepared by the ordinary workmen upon the contract. Without the use of the trucks to haul the material for the base, the work could not well have proceeded. It is true, mules and carts could have been used, but not with expedition. If the driver of a truck, which would not run on account of some break of the parts, had performed the labor in remedying the defect, it would scarcely be contended that his labor would not be protected by the bond; and we can see no difference in his labor from that of the stranger who is called in to do the same work. But whether the bond covers the price of material used in the repair of this machinery, and as the stipulation

says was not entirely consumed in the performance of the contract, presents a more difficult question. But in view of the statute above quoted and referred to and the wording ·of the obligation of the bond, which says that the contractor shall pay every person furnishing material or performing labor *in and about* the construction, we have concluded that plaintiff is also entitled to recover on the bond for the parts used in the repair of the trucks. Without those repairs used in and about the trucks the machinery would not have contributed to the work. They were as useful and beneficial as the work of the laborers who operated them on the job. These materials were used in and about the work, and were necessary that the work be carried on. It benefited the contractor and his bondsman. For greater liability on both would have resulted had the work stopped and the project failed. In *Fidelity and Deposit Co.* v. *Hedgewald Co.* (Ky.), 139 S. W. 975, the bond stipulated that the contractor "shall pay for all labor performed or furnished and for all materials used in the carrying out of said contract". In the case, like the instant one, the contractor was using certain machines in the conduct of the work, which became worn and out of repair, and the Hedgewald Company repaired them and replaced the worn out parts, and the court held that the costs of the repairs and the labor attendant thereon fell within the obligation of the bond. It was pointed out in the opinion in that case that a man who hauled lumber to the place where a building was to be erected was entitled to a lien, although he did not actually work on the building. There was at least as much reason why the man who made serviceable the machine itself necessary in constructing the sewer should likewise be protected under the bond. As above. stated, the right of recovery against the surety for the item charged by plaintiff for parts used in the machinery and not totally consumed in the road-building is not free from difficulty; but we place his right to recover, on the intention evidenced by the law makers and by the bond itself given in pursuance of the statute, which bond requires payment for all labor and materials used (not totally used) *in and about* the construction of the roadway.

The decree will be reversed, and plaintiff's bill reinstated;

and proceeding to do what the circuit court should have done, decretal judgment will be entered here against the defendants on the pleadings, exhibits and the agreed statement of facts, in the sum of $2,570.77, with interest from the 1st day of December, 1924.

*Reversed; bill reinstated; decree rendered.*