## AMERICAN LIABILITY & SURETY CO. v. BLUEFIELD SUPPLY CO. et al.

### No. 3561.

Circuit Court of Appeals, Fourth Circuit.
April 3, 1934.

---

188

Arthur G. Stone, of Charleston, W. Va. (H. D. Beggs, of Cincinnati, Ohio, and Maurice J. Crocker and Rummel, Blagg & Stone, all of Charleston, W. Va., on the brief), for appellant.

Arthur F. Kingdon, of Bluefield, W. Va., for appellees.

Hartley Sanders, of Princeton, W. Va. (W. S. Dangerfield, of Princeton, W. Va., on the brief), for appellee Piper & East.

Lively, Lively & Stambaugh, of Charleston, W. Va., on the brief, for appellee Marion Steam Shovel Co.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a suit in equity instituted by the Bluefield Supply Company, a West Virginia corporation, against the appellant, an Ohio corporation, in the circuit court of Mercer county, W. Va. On petition of the appellant the cause was removed to the District Court of the United States for the Southern District of West Virginia, at Bluefield. The appellant in its answer to the bill of complaint alleged the existence of other claimants having demands similar to those of the plaintiff, and asked that they be made parties to the suit.

Various of these claimants came into the cause and were made parties and reference was ordered to a special master to take evidence and report as to his findings of fact and law.

In his report the special master made certain findings which were confirmed in every particular by the district judge.

In May, 1933, the Supreme Court of Appeals of West Virginia handed down an opinion dealing with certain of the principles here involved (Rhodes v. Riley, 169 S. E. 525) and the appellant shortly thereafter filed a petition for rehearing. The judge below denied the petition and entered a final decree confirming the report and entered judgment against the appellant for various amounts due the different claimants. From this action of the court below this appeal was brought.

In April, 1930, J. R. Rich, F. K. Rich, and C. C. Beckwith, partners doing business as Rich-Beckwith Construction Company, entered into a written contract with the State Road Commission of West Virginia, for the construction of a portion of a state highway in Raleigh county, W. Va. The amount to be paid the contractor was $132,-268.98. The contractor, with the appellant as surety, executed to the state of West Virginia a bond of $66,134. This bond included the following condition: "Now, Therefore, if the above 'principal' as Contractor, shall in all respects comply with the terms of the contract and conditions of said contract, and his, their or its obligation thereunder, * * * and shall well and truly, and in a manner satisfactory to the State Road Commission of West Virginia, complete the work contracted for, and save harmless the State of West Virginia from any expense incurred through the failure of said Contractor to complete the work as specified, * * * or for any liability for payment of wages due or material furnished said Contractor, and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said Road all and every sum or sums of money due him, them, or any of them, for all such labor and materials for which the Contractor is liable * * * then this obligation to be void or otherwise to be and remain in full force and virtue."

In an indemnity agreement, executed in connection with the application for the bond, the contractors as principals agreed, among other things, to: (a) Indemnify the defendant surety company and save it harmless

against all loss, cost, damage, charge or expense sustained by it by reason of the act, default or neglect of the principals; (b) assign, transfer and convey unto the defendant, as of the date of said application, April 12, 1930, all right, title, and interest in and to all the tools, equipment, and materials of every nature and description that said principals had or might thereafter have on said work, or in or about the site thereof, should the said principals fail or be unable to complete or default under the terms of said contract; (c) subrogate the defendant, as of the date of said application, April 12, 1930, to all rights, privileges, and properties of said partners as principals and otherwise in said contract; (d) assign, transfer, and convey to the defendant all the deferred payments and retained percentages, and any and all money and properties that were due and payable to the principals at the time of such breach or default, or may have become due and payable on account of said contract, or on account of extra work or materials supplied in connection therewith.

In January, 1931, the State Road Commission of West Virginia, entered an order declaring the contractor in default of the contract and directing the surety to proceed with the completion of the contract. Thereupon the appellant assumed the completion of the project and took charge of all the equipment, tools, and materials of the contractor that were on the job and received from the Road Commission all retained percentages due the contractor, as of date of default, and also all moneys due on subsequent estimates.

Numerous claims were asserted against the appellant as surety of the contractor. The total of the claims allowed by the special master was $22,381. The appellant has paid certain of the claims allowed, leaving claims amounting to $9,339.74, involved in this appeal.

The issue presented here is whether the bond of the surety company, given pursuant to section 25, c. 43, Barnes' Code of West Virginia, 1923, covers rental of equipment and machinery; the purchase price of small tools, appliances and supplies; repairs made upon the contractor's equipment; replacements of the contractor's equipment; and freight charges for materials. The special master's report confirmed by the decree of the court below found that the appellant's bond as surety covered rental of equipment and machinery; small tools, appliances, and supplies; incidental repairs made upon the contractor's equipment and supplies therefor; in certain cases, the purchase price of equipment; and freight charges for materials.

It is well settled that federal courts will follow the construction of a state statute announced by the highest tribunal of the state where no federal question is involved.

"* * * the federal courts uniformly follow the construction of the Constitution and statutes of the state, announced by its highest tribunal, in all cases that involve no question of law or of right under the Constitution and laws of the United States." Hughes Federal Practice, Vol. 6, § 3693.

This rule is also applicable where decisions of the highest court of a state construe its former decisions.

"The decisions of the highest court of a state construing its former decisions which have construed the Constitution and statutes of the state, are controlling in a federal court in the state as to such construction."

"* * * The federal court exercises its independent judgment where the state statute has not been construed by the state courts; or where the construction of a state statute is not clearly established by state court decisions; and it is not bound by state decisions which change the established rule. But even though a declaration of a state court, as to what is the law of the state, is a dictum in the case in which it is made, it must be accepted by a federal court sitting in that state, as final where it has been cited and approved by subsequent decisions of the state court as dispositive of the question in that state."

Hughes Federal Practice, Vol. 6, §§ 3699 and 3736.

At the time of the decision, of the questions here involved, by the court below and at the time of the submission of this case in this court, the decisions of the Supreme Court of West Virginia, on certain questions involved here, were somewhat conflicting and difficult of construction. In the case of Julian v. Cavin, 111 W. Va. 395, 162 S. E. 318, the court apparently allowed rental of equipment as a proper charge against the surety on the bond. In that case the court said: "Under Code 1923, c. 75, § 12, the surety on the bond of a contractor who contracts with a county court to build a road is liable for the rental of machinery necessarily used in the construction of the road."

In the case of Rhodes v. Riley (W. Va.) 169 S. E. 525, the court holds: "The surety on the bond of a public contractor is not liable for the purchase price or the rental of

anything which is or should be a part of the contractor's regular equipment."

The court in the Rhodes Case attempted to distinguish it from the case of Julian v. Cavin, but as the question of rental was not involved in the Rhodes Case it might be contended that what was there said was dictum. On the 23d day of January, 1934, the Supreme Court of Appeals of West Virginia, in the case of National Equipment Corporation et al. v. Pinnell, 172 S. E. 790, handed down an opinion construing its former opinions on the question of rental and repairs incident to the use of contractors' equipment. In this case the court said:

" 'The surety on the bond of a public contractor is not liable for the purchase price or the rental of anything which is or should be a part of the contractor's regular equipment.' Rhodes v. Riley et al. (W. Va.) 169 S. E. 525, point 3 syllabus.

"Code 1931, 17-4-16, makes the contractor and his surety liable for the repair work and the repair parts incident to the use of a subcontractor's regular equipment while employed in the construction of a public road. Hicks v. Randich, 106 W. Va. 109, 144 S. E. 887." *

In view of this latest holding of the Supreme Court of Appeals of West Virginia, which is binding upon us, the allowance made for items involving rental of equipment, which was or should have been a part of the contractor's regular equipment, was erroneous.

As to the items of small tools, appliances, and supplies used up or practically used up during the work on the contract, under the decisions of the Supreme Court of Appeals of West Virginia, the surety on the bond is properly chargeable with them as well as with the incidental repairs made upon the contractor's equipment while doing the work and the supplies therefor. The surety is not, however, properly chargeable for the purchase price of any equipment that was or should be a part of the contractor's regular equipment.

Many of the questions involved here were discussed by Judge Parker, of this court,

in an able opinion in the Ohio River Gravel Company Case, 20 F. (2d) 514, where this court held that the surety on the bond was liable for freight charges for the carrying of materials used in the work of construction where the charges had been paid by the shipper; here the freight charges are for an unpaid balance of the freight resulting from an error in the original charge. We do not think this is a material difference and are of the opinion that the freight charges were a proper part of the cost of the material laid down at the place of construction and that the surety should be liable for the freight charges as well as for the materials furnished.

See, also, Illinois Surety Company v. John Davis Company, 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; 30 A. L. R. 466, note.

This seems to be in accordance with the ruling of the Supreme Court of Appeals of West Virginia in Coal & Coke R. Co. v. Buckhannon River Coal & Coke Company, 77 W. Va. 309, 87 S. E. 376, L. R. A. 1917A, 663.

There are a number of items of equipment which evidently should have been a part of the contractor's regular equipment, the price of which was allowed as a charge against the bond, apparently on the theory that under the indemnity agreement between the contractors and the surety, the surety had taken possession of this equipment on taking over the work and should therefore be held accountable. We do not think this is a correct theory. When these items of equipment were sold to the contractor they were sold upon the credit of the contractor, not the surety, and the vendor became the creditor of the contractor. When the surety took over the contract there was no lien on the property and the taking over vested title in the surety. It is not necessary to cite authorities to the effect that title to personal property in such cases, passes with possession. The surety is not liable for any property taken under the indemnity agreement with the contractor for which it would not be liable under the conditions of the bond. The mere fact that it got the property from the rightful owner, the contractor, under a lawful

* For other West Virginia decisions dealing with related questions to those arising here, see: Hicks v. Randich, 106 W. Va. 109, 144 S. E. 887; Hoover-Dimeling Lumber Company v. Neill, 77 W. Va. 470, 87 S. E. 855, 11 A. L. R. 575; Morton Motor Company v. Casualty Company, 109

W. Va. 67, 152 S. E. 860; Pfaff & Smith Builders' Supply Company v. Mason, 103 W. Va. 318, 137 S. E. 356; Bowling v. Julian Construction Company, 110 W. Va. 275, 158 S. E. 165; Perry v. Horn, 22 W. Va. 381; State v. Coda, 103 W. Va. 676, 138 S. E. 324.

agreement does not make the surety liable to the vendor who has sold to the contractor and delivered possession without reservation of any lien.

It is also contended on behalf of appellant that the court below .erred in allowing interest upon the various amounts from the time the accounts became due; in this respect we think the action of the court was proper. The fact that the liability of the surety was denied when there was no dispute as to the amount of the claim does not render the claims unliquidated. Illinois Surety Company v. John Davis Co., supra;. United States v. Ambursen Dam Co. (D. C.) 3 F. Supp. 548.

West Virginia Code, 1931, 56-6-27, provides that a jury in any action founded upon contract may allow interest on the principal due or any part thereof. The surety is chargeable as an original promisor. 12 R. C. L. 1057. The justness and the amounts of the claims were not in dispute, only the liability, and the allowance of interest as made by the court below, on claims for which the surety is liable, was correct. Certainly this question was at least within the discretion of the court. (15 R. C. L. 10-11) Id., p. 27; Pederson et al. v. United States (C. C. A.) 253 F. 622; United States v. Illinois Surety Co. (C. C. A.) 228 F. 304.

It is also contended on behalf of appellant that the court erred in granting all of the costs below against the surety company. In view of our conclusion here we think the costs should be apportioned between the parties in such ratio as the district judge may think just.

We conclude, therefore, that the surety is not liable for the purchase price or the rental of anything which was or should have been a part of the contractor's regular equipment or for permanent replacement of the contractor's equipment. The surety is liable for the price of small tools, appliances, and supplies virtually consumed in the execution of the contract and for repairs and repair parts incident to the use of its equipment and for freight charges for materials.

The decree of the court below will be affirmed in part, and reversed in part, and remanded for further action in accordance with the views here expressed. The costs on appeal will be divided equally between appellant and appellees.

Remanded.