CECIL I. WALKER MACHINERY COMPANY,

*a corporation,*

*v.*

STAUBEN, INC.,

*a West Virginia Corporation,*

and

MARYLAND CASUALTY COMPANY,

*a Maryland Corporation*

(No. 13549)

Decided April 9, 1976.

*Stone, Bowles, Kauffelt & McDavid, T. D. Kauffelt and Roger W. Tompkins* for appellant.

*Bibby & Good, Albert F. Good* for Maryland Cas. Co.

WILSON, JUSTICE:

In an action instituted in the Circuit Court of Kanawha County, Cecil I. Walker Machinery Company sought to recover from Stauben, Inc., and Maryland Casualty Company the sum of $8,299.19 for certain "repairs" which were made to a bulldozer previously owned and used by Stauben in the performance of a contract with the State Road Commission of West Virginia involving a highway project (hereinafter referred to as the Lubeck project) in Wood County, West Virginia, to secure the performance of which Stauben had entered into a contract bond with Maryland Casualty Company as required by *W. Va. Code,* 17-4-20.

The case was tried by the lower court without a jury on the pleadings, the written stipulations of the parties, the exhibits attached thereto and the arguments and briefs of counsel. Thereafter, the lower court entered an order on April 1, 1974, granting judgment to Walker against Stauben for the sum of $8,299.19, together with interest thereon from May 25, 1970, but further ordering that Walker recover nothing from the defendant, Maryland Casualty Company.

On appeal only as to that portion of the order denying recovery as to Maryland Casualty, Walker contends that the lower court erred in construing and applying the provisions of *W. Va. Code,* 17-4-20, in such a manner as to bar recovery against Maryland Casualty by finding that the statutory bond did not cover repairs which substantially increased the value of the bulldozer, constituted replacements or major repairs to the bulldozer, were made at a time after the completion of the highway construction project and were not entirely consumed in work on the project.

The factual background may be generally summarized as follows: By contract dated October 7, 1969, Stauben undertook to perform work on a highway project for the State Road Commission of West Virginia to secure the

performance of which it provided a contract bond with Maryland Casualty Company as surety which said bond was attached to said contract and made a part thereof.[1]

The bond was provided pursuant to *W. Va. Code*, 17-4-20 which then read as follows:

"... shall pay in full to the persons entitled thereto for all material, gas, oil, repairs, supplies, equipment, rental charges for equipment and charges for use of equipment, and labor used by him in and about the performance of such contract ...."

Stauben entered upon the performance of its contract and in connection therewith used the bulldozer which is the subject of this litigation.

---

[1]The pertinent provisions of the bond in which Stauben was the principal and Maryland Casualty Company was the surety are as follows:

"NOW, THEREFORE, if the above 'principal' as Contractor, shall in all respects comply with the terms of the contract and conditions of said contract, and his, their or its obligations thereunder, including the specifications therein referred to and made part thereof, and such alterations as may be made in such specifications as herein provided for, and shall well and truly, and in a manner satisfactory to the State Road Commission of West Virginia, complete the work contracted for, and shall save harmless the State of West Virginia from any expense incurred through the failure of said Contractor to complete the work as specified, or for any damages growing out of the carelessness of said Contractor or his, their or its servants, or for any liability for payment of wages due or material furnished said Contractor, and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said Slide Correction all and every sum or sums of money due him, them, or any of them, for all such labor and materials for which the Contractor is liable.

"And also shall save and keep harmless the said State of West Virginia against and from all losses to it from any cause whatever, including patent, trade-mark, and copyright infringements in the manner of constructing said Slide Correction; then this obligation to be void or otherwise to be and remain in full force and virtue."

The history of the bulldozer, insofar as it is described in the record, is interesting and has some bearing on our view of this case. This was a used bulldozer when it was first acquired by Walker at auction on March 29, 1968. Thereafter, from time to time, it was leased to and used by various companies until July 3, 1969, when it was leased and used by Stauben on a construction project in Tucker County, West Virginia, after which it was moved by Stauben to the Lubeck project in Wood County, West Virginia. Except for brief periods of shutdown due to mechanical failure or inclement weather, it was used by Stauben on said Lubeck project until April 25, 1970, when Stauben completed its work thereon. It also appears that Stauben purchased the bulldozer from Walker on April 8, 1970, the purchase price of which was secured by a security agreement.

During the last 25 days of Stauben's work on the Lubeck project, the bulldozer broke down from time to time and was temporarily repaired by Walker. Those repairs, however, are not a part of Walker's claim in this action. From April 25, 1970, to May 1, 1970, although the bulldozer remained on the Lubeck project, it was not used for any purpose on that project. On May 1, 1970, it was transported to Walker's Parkersburg shop and underwent repairs from May 1, 1970, to May 25, 1970, after which it was transported to and put into use on a job by Stauben in Mason County, West Virginia, not covered by the bond here involved.

The nature of the repairs which are the subject of this action do not need to be described in elaborate detail. They were primarily repairs to the motor and the transmission. The extent and scope of the repairs are demonstrated by the stipulations which show that the reasonable market value of the motor prior to repairs was $5,300.00 to $6,100.00 and after the repairs was $11,111.00 to $11,852.00; the reasonable market value of the transmission prior to repairs was $5,800.00 to $6,200.00 and after the repairs was $6,755.00 to $7,206.00; and the reasonable market value of the bulldozer in its

entirety prior to repairs was $17,000.00 to $20,000.00 and after the repairs was $25,000.00 to $30,000.00.

The controlling facts in this case, as they appear from the stipulations, the reasonable inferences therefrom and the findings of the lower court, are: (1) The repairs involved were major repairs which substantially increased the value of the bulldozer which was a part of the contractor's regular equipment; (2) Walker had no reasonable basis for believing that the major repairs to this much-used bulldozer were necessitated by the wear and tear on the equipment on the Lubeck project alone; and (3) The repairs were made after Stauben had completed work on the project, at a time when Walker had no reason to believe that the bulldozer would be further used on the job.

At first glance, the cases which have been decided under statutory and bond provisions similar, although not identical, to the ones which are here involved, seem to be somewhat confusing and lacking in direction. A closer study, however, reveals that there is a consistency in the cases which enables us not only to define the purpose to be served by the statutes and the bonds but also the application thereof to particularized circumstances.

Liens against public projects have not been permitted. As a consequence, those who would be protected by mechanic's liens or materialmen's liens if the project were a private project have found their protection in statutes requiring bonds for their protection.

It has been uniformly held that a bond given pursuant to a statute should be read as though given in literal compliance with the statute. See, State v. Wotring, 56 W. Va. 394, 49 S.E. 364 (1904); Tug River Lumber Co. v. Smithey, 107 W. Va. 482, 148 S.E. 850 (1929); Bluefield Supply Co. v. M. P. Smith Construction Co., 115 W. Va. 537, 177 S.E. 296 (1934).

Likewise, when the surety is a corporation and supplies bonds for a consideration, the courts will construe

the obligations of the bond most strongly against the surety. *See, Hicks v. Randich*, 106 W. Va. 109, 144 S.E. 887 (1928).

Generally speaking, the courts have endeavored to extend the protection afforded by the statutory bond as far as reason and logic will permit. For example, under a statute providing for a bond covering payment for the cost of materials, etc., used in the construction, improvement, alteration or repair of any public building or other structure to be used for public purposes, this Court found that a highway was a "structure" within the meaning of such statute. *State ex rel. West Virginia Sand and Gravel Co. v. Royal Indemnity Co.*, 99 W. Va. 277, 128 S.E. 439 (1925). Similarly, in *Julian v. Cavin*, 111 W. Va. 395, 162 S.E. 318 (1932), this Court extended the protection of the bond to cover the rental of machinery necessarily used in the construction of a public road. Likewise, this Court has held that statutory bonds covered work done in repairing a highway contractor's trucks and the reasonable value of repair parts for such trucks while they were being used to haul material for the road base. *Hicks v. Randich, supra.*

However, this Court and other courts have found it necessary to define the outer limits of the surety's obligation beyond which it would be improper to expose the surety to liability. For example, in *Morton Motor Co. v. Fidelity and Casualty Co.*, 109 W. Va. 67, 152 S.E. 860 (1930), and *Rhodes v. Riley*, 113 W. Va. 679, 169 S.E. 525 (1933), this Court refused to permit the seller of trucks to a contractor engaged in the construction of a public highway to recover the purchase price of said trucks.

The reasoning of this Court in those cases was refined in *National Equipment Corp. v. Pinnell*, 114 W. Va. 558, 172 S.E. 790 (1934), and the opinion was expressed that the purchase price or the rental of anything which should have been a part of the contractor's regular equipment would not be protected under the statutory bond.

Other courts, while evidencing the same intention to extend the coverage of the statutory bond as far as possible, have found limits to the protection afforded.

For example, in *Clifton v. Norden,* 178 Minn. 288, 226 N.W. 940 (1929), the court refused to extend the protection of the bond to major repairs involving replacements of old with new parts in the absence of proof that the new parts were consumed in the work covered by the bond. It justified its holding, at 226 N.W. 941, as follows:

> "The law was not intended to permit a contractor to go onto a bonded job with a run-down outfit and have it rebuilt at the expense of his surety. Public contracts require the contractors to furnish their own equipment."

The courts have also refused to permit recovery against the bonding company for the purchase price of equipment which was or should have been a part of the contractor's regular equipment, *American Liability and Surety Co. v. Bluefield Supply Co.,* 70 F.2d 187 (4th Cir. 1934); for replacements such as a rear axle, differential and transmission parts when there was no evidence that the replacements would be consumed in the performance of the contract, *Mack International Motor Truck Corp. v. Western Surety Co.,* 194 Minn. 484, 260 N.W. 869 (1935); for repair parts, appliances and accessories which added materially to the value of the equipment and rendered it available for other work not within the coverage of the bond, *Continental Casualty Co. v. Clarence L. Boyd Co.,* 140 F.2d 115 (10th Cir. 1944); for repairs made to machinery after the completion of the project, *United States ex rel. Roig v. Castro,* 71 F. Supp. 36 (D. P.R. 1947); and for the cost of certain items when there was no reasonable expectation that the items furnished would be substantially consumed in the work under contract with the State, *International Harvester Co. v. L. G. DeFelice and Sons, Inc.,* 151 Conn. 325, 197 A.2d 638 (1964).

A synthesis of the views expressed in the cases referred to above would seem to be that even though the statutory bond is to be liberally construed to provide

protection, it would not be construed to expose the bonding company to liability for repairs of a major nature which added substantially to the value of the equipment, or to repairs or replacements which would not be substantially consumed on the contract involved, or to repairs or replacements which could not be reasonably expected to be used on or consumed in the performance of the job covered by the contract.

Measured by these limiting standards, it is clear that Walker's claim against Maryland Casualty Company in this case must fail.

The repairs which Walker made were major repairs. They contributed substantially to an increase in the value of the equipment. There was not and could not have been any reasonable expectation that this equipment, after repair, would in any way be used or consumed entirely or in part on the job to secure the performance of which Maryland Casualty gave its bond.

To permit a recovery by Walker in a case such as this would expand the risk of bonding companies beyond all reasonable bounds and would expose them to liability for keeping the contractor in business not only on the project for which the bond was given but on subsequent projects which would require the use of any of his ordinary equipment.

For the reasons stated above, we affirm the judgment of the Circuit Court of Kanawha County denying recovery against Maryland Casualty Company.

*Affirmed.*